**AIR LINE PILOTS ASSOCIATION,**
International, and Thomas J.
Beedem, Jr., Plaintiffs,

v.

**NORTHWEST AIRLINES, INC., and**
J. D. Reynolds, Defendants,

and

**Thomas D. Klemens, et al.,**
Intervenors–Amici Curiae.

**Civ. No. 4–79–328.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 19, 1980.

---

**614**

Daniel S. Kozma, Legal Dept., Air Line Pilots Ass'n, Int'l, Washington, D. C., Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for plaintiffs.

Steven D. Wheeler, Corporate Secretary–Counsel, Northwest Airlines, Inc., Minneapolis–St. Paul Intern. Airport, David A. Ranheim, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for defendant Northwest Airlines.

Robert C. Randolph, MacDonald, Hoague & Bayless, Seattle, Wash., Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for defendant Reynolds.

David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., John R. Hoffman, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for interventors–amici curiae.

## MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MacLAUGHLIN, District Judge.

### I. HISTORY OF THE CASE

Plaintiff (hereinafter referred to as ALPA) filed this action under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and 28 U.S.C. §§ 1331, 1337, 2201 and 2202, on July 13, 1979. The complaint petitions for a declaration that the earlier of two written decisions issued by a neutral referee is valid and binding, and for the enforcement of that decision. Defendants Northwest Airlines (hereinafter referred to as NWA) and Reynolds answered and defended on the ground that only the latter of the two written decisions is valid and binding on the parties. After engaging in discovery, ALPA filed a motion for summary judgment on April 11, 1980. Defendants NWA and Reynolds filed motions for summary

judgment on June 4, 1980. Memoranda of law were submitted by all parties, and oral argument was heard by the Court on August 27, 1980. The cross motions for summary judgment are now before the Court for decision.

## II. FACTS

This action arises from a labor dispute and arbitration proceeding between ALPA and one of its members, Reynolds. The events that led to the lawsuit are somewhat complex, but are not disputed by the parties.

ALPA is the authorized collective bargaining agent for all pilots employed by NWA and many other U.S. airlines. In 1972, NWA pilots engaged in a protracted strike against NWA. When some pilots were not immediately recalled to work after the strike ended, the local office of ALPA levied an assessment on all NWA pilots to provide benefits to the pilots not recalled. Reynolds, a NWA pilot, objected to the assessment and refused to pay it. He relied on section (a)–the Agency Shop provision–of the Supplemental Agreement on Union Security between NWA and ALPA. Subsection (a)(1) provides:

> Membership in the Association or payment of the aforesaid service charge shall not be a condition of employment for any pilot for whom membership is not available upon the same terms and conditions as are generally applicable to any other member. Membership in the Association or payment of the aforesaid service charge shall not be a condition of employment for any pilot to whom membership is denied or terminated for any reason other than the failure to tender the periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership in the Association[.]

Reynolds argued that the assessment was not "uniformly required" of all ALPA members as a condition of membership in ALPA, and was therefore discriminatory. He further maintained that he could not be expelled from membership for refusing to pay it.

ALPA disagreed with his interpretation. In September of 1975, it expelled Reynolds from membership in the union. After this expulsion, Reynolds remained in the employment of NWA. However, he refused to continue paying service charges to the union, as is required of all nonmembers of the union by the Agency Shop clause. Reynolds argued that he was relieved of his duty to pay this service charge because he had been denied membership in the union "upon the same terms and conditions as are generally applicable to any other member," as required by the first sentence of subsection (a)(1). ALPA responded by attempting to get Reynolds discharged from employment. Alleging that Reynolds had failed to remit union dues incurred and owing at the time of his expulsion from membership as well as the service charges accrued from the time of his expulsion, it gave Reynolds notice that this provided grounds for dismissal from employment. In June of 1976, it asked NWA to fire Reynolds in accordance with subsection (d) of the Supplement Agreement. NWA refused to do so, believing that it could consider the pilot's defense to the charge against him before carrying out the union's request.

The union invoked the collective bargaining agreement's grievance and arbitration procedure, which culminates in a hearing before a body known as the System Board of Adjustment. The System Board had authority to decide only the dispute between NWA and ALPA over the interpretation of subsection (d) of the Supplement Agreement. If the System Board decided that NWA was compelled to discharge Reynolds, then Reynolds could, under subsection (e) of the Supplemental Agreement, obtain a stay of the discharge and have his dispute with ALPA heard in a separate proceeding before a "neutral referee." Because the two disputes were interrelated, the parties selected the same person, Howard S. Block, to serve as both the neutral chairman of the System Board and as "neutral referee" for the Reynolds grievance.

The System Board, chaired by Block, held its hearing on August 18, 1977. At the

conclusion of that hearing, the System Board orally announced its decision that NWA had to comply with the union's request without exercising any discretion or considering the pilot's defenses.

Immediately following that hearing, Block, in his role as neutral referee, conducted a hearing in the dispute between Reynolds and ALPA. At the close of the latter hearing, Block stated:

> [A]ll three parties, agreed that this hearing would be officially closed with the rendition of the opinion and award. And as I explained, because this is a somewhat unique type of arbitration proceeding, I would like to reserve the right to perhaps reconvene the hearing if that seemed advisable, or contact counsel, if some further information were deemed necessary. But I would have the sole right to do that. It could not be re–opened at the request of any of the other parties.

Tr. at 197.

By January, Block had written up a document containing the decisions for both disputes. On January 17, he mailed the document to the other members of the System Board, and also mailed copies to the lawyers for the parties. Block left the document unsigned, and inserted a provision for date that read, "February ——, 1978." In his cover letters, Block referred to the document as a "draft" of the decision. To the other members of the System Board, he indicated that unless they desired further discussions, they should sign the Award of the System Board and return it to Block for his signature. To the lawyers, he stated that he was sending the copy of the decision "as a matter of convenience in the event that your Board members should wish to confer with you concerning it." He expressed his intent to mail to them fully executed copies after the System Board members completed their execution of the Award in the ALPA grievance against NWA.

In substance, the decision ruled entirely in favor of ALPA. When the lawyer for Reynolds received the January 17 letter and copy of the decision, he filed a "Motion for Reconsideration." In this document, he contended that Block had wrongly decided several points of law, and used arguments that were the same as, or similar to, those he pressed at the initial hearing. Counsel for NWA wrote to Block in support of this motion. Counsel for ALPA wrote to Block opposing the motion, asserting that reconsideration of the decision would be improper.

On February 24, 1978, Block wrote to the lawyers for ALPA and Reynolds, indicating that he had decided that one of his conclusions of law in the January, 1978, document was incorrect. He indicated that "the record is still open," and invited counsel for ALPA either to request that the hearing be reconvened or to submit a memorandum of law on the matter. ALPA responded with a letter memorandum strenuously objecting to the reopening of the hearing, and further arguing that Block had correctly decided the merits in the January document. Block replied to ALPA's letter memorandum in a letter that indicated that he had not considered the January document a final award–only a "draft" intended to elicit reactions and further information. ALPA submitted no further arguments or evidence. On June 14, 1978, Block issued a second written decision, this time fully executed. The June document is identical to the January document through the first 19 pages. The final four pages, however, decide a dispositive issue in favor of Reynolds rather than ALPA. One year later, ALPA filed this lawsuit to compel enforcement of the January, 1978, document. The complaint asks this Court to declare that the referee's decision mailed on January 17, 1978, is valid and binding and that the award of June 14, 1978, is of no effect, and also to grant an injunction requiring NWA to comply with the System Board's decision by discharging Reynolds.

## III. DISPOSITION

This Court has the jurisdiction to enforce the decisions of the System Board and the neutral referee. *International Association of Machinists v. Central Airlines*, 373 U.S. 682, 692, 83 S.Ct. 956, 10 L.Ed.2d

67 (1963). However, the scope of judicial review is limited. The plaintiff contends that there are several bases that would justify this Court in confirming the January, 1978, decision as final and binding on the parties. The defendants argue that there is no basis for judicial intervention, and that this Court should confirm the decision of June 14, 1978, as final and binding on the parties.

### A. *The Scope of Review*

■ With respect to labor arbitration in general, the Supreme Court established the limited role of the judiciary in the "Steelworker's Trilogy," *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Taken together, the Trilogy establishes the following propositions: (1) When the parties agree to submit to arbitration, the function of the Court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract," *American Manufacturing,* 363 U.S. at 568, 80 S.Ct. at 1346; (2) that all doubts about arbitrability and the scope of the arbitrator's authority "should be resolved in favor of coverage," *Warrior & Gulf,* 363 U.S. at 583, 80 S.Ct. at 1353; and (3) that the arbitrator's interpretation of the collective bargaining agreement is not to be second guessed by the courts, *Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362. Thus, even if the Court believes that the arbitrator erred on a matter of fact or law, it cannot overturn the award unless the award exceeds the arbitrator's authority.

With respect to arbitration in the airline industry, the scope of review is defined by statute. Section 184 of 1936 Air Carrier Amendments, 45 U.S.C. §§ 181–188, to the Railway Labor Act, 45 U.S.C. § 151 *et seq.,* requires some form of board of adjustment in the airline industry, but does not itself establish any scope of review. It states only that the jurisdiction of airline boards of adjustment may not exceed the jurisdiction granted to the National Railroad Adjustment Board under section 153. In *Hunt v. Northwest Airlines, Inc.,* 600 F.2d 176 (8th Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979), the petitioner argued that section 184 permitted broader judicial review than that allowed in section 153. The Eighth Circuit declined to expand the scope of review, holding that "congressional intent requires identical court treatment of airline board decisions under section 184 and railroad board decisions under section 153, and this has been the continuing policy of the courts." *Id.* at 178.

45 U.S.C. § 153 First (m) specifies that the awards of a railroad board "shall be final and binding upon both parties to the dispute." 45 U.S.C. § 153 First (*o*) empowers the Board to issue orders "to make the award effective." 45 U.S.C. § 153 First (p) and (q) permit judicial review of NRAB orders to the following extent:

> The district courts are empowered, under the rules of the Court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board; *Provided, however,* That such order may not be set aside except [1] for failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (p).

This standard of review has been applied consistently in response to claims that courts are empowered to exercise wide review powers over decisions of airline system boards. *See Eastern Air Lines, Inc. v. Transport Workers Union, AFL–CIO, Local 553,* 580 F.2d 169 (5th Cir. 1978); *Rossi v. Trans World Airlines, Inc.,* 507 F.2d 404

(9th Cir. 1974), *aff'g*, 350 F.Supp. 1263, 1269 (C.D.Cal.1972); *Rosen v. Eastern Air Lines, Inc.*, 400 F.2d 462 (5th Cir. 1968), *cert. denied*, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969); *Northwest Airlines, Inc. v. Air Line Pilots Association, Int'l*, 373 F.2d 136 (8th Cir.), *cert. denied*, 389 U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967). Accordingly, decisions of airline system boards which touch upon the issues in question will normally serve as a complete bar to judicial review.

■ Several propositions can be derived from the foregoing discussion. The first inquiry for the Court is to determine which of the referee's decisions, if either, constituted his award. If the Court determines that one decision is final and binding, the merits of that decision may not be reexamined. The Court's scrutiny of the referee's award is then limited to determining whether the referee complied with the requirements of the submission to him, whether he exceeded the scope of his jurisdiction, or whether he was guilty of any fraud or corruption.[1]

### B. *Finality of the Awards*

At common law, an arbitrator could not reexamine the merits of his decision once he had issued his award. This rule has been stated as follows:

> It has been said to be "a general rule in common law arbitration that when arbitrators have executed their awards and declared their decision they are functus officio and have no power to proceed further." A detailed statement of this common law rule explains: "The authority and jurisdiction of arbitrators are entirely terminated by the completion and delivery of an award. They have thereafter no power to recall the same, to order a rehearing, to amend, or to 'interpret' in such manner as may be regarded as authoritative. But they may correct clerical mistakes or obvious errors of arithmetical computation."

F. Elkouri & E. Elkouri, *How Arbitration Works* 239 (3d ed. 1973) (footnotes omitted). *Accord, LaVale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967) (discussing Pennsylvania common law). This principle is simply another form of the statutory command that the decision of the arbitrator "shall be final and binding upon the parties to the dispute." For if an award is to be final, then the statute must be interpreted to mean not only that a court cannot redetermine the merits for the parties, but also that the arbitrator himself cannot redetermine the merits. *Cf., Paperhandlers Union No. 1 v. U. S. Trucking Corp.*, 441 F.Supp. 469, 474–475 (S.D.N.Y. 1977), *appeal dismissed*, 578 F.2d 1369 (2d Cir. 1978) (remand for clarification of award does not give arbitrator *carte blanche* to redetermine merits).

It is undisputed that Referee Block could not redetermine the merits of his decision once he had issued his award. The real issue, then, is to determine what makes a decision final, and whether the January, 1978, decision was final. The resolution will turn on the answers to two questions: Whether a signature is required to make an award final, and who has the authority to decide what arbitral procedures are proper?

■ The plaintiff contends that a signature is immaterial in determining whether the January, 1978, decision was binding, and argues that it became final when the arbitrator mailed it out to the parties. The defendants contend that a signature is a prerequisite to an award becoming final, and that because the January, 1978, decision was unsigned and carried a provision for a February date, it never became final. The Court agrees with the defendants. Elkouri and Elkouri state the general rule as follows:

> Except in rare instances awards are issued in writing. Even when an oral award is rendered, the arbitrator usually later reduces it to writing. The written award must be signed by the arbitrator.

---

**1.** Since there has been no suggestion of any fraud or corruption by the referee, there will be no inquiry under this basis for review.

Awards of arbitration boards must be signed by all members where a unanimous decision is required, otherwise they must be signed by at least a majority . unless the agreement or a stipulation expressly permits issuance of an award by the neutral alone.

*How Arbitration Works* 236–37 (3d ed. 1973) (footnotes omitted). The plaintiff cites one case as authority for the proposition that no signature is required. The case, *Journal Times v. Milwaukee Typographical Union,* 409 F.Supp. 24 (E.D.Wis. 1976), is unpersuasive. The plaintiff's proposition is inferred from the facts of that case. The court did not consider the issue at all.

Moreover, the issue is controlled by the provision of the Railway Labor Act that requires signatures on awards. Section 158(g) states, "The agreement to arbitrate . . . (g) Shall stipulate that the signatures of a majority of said board of arbitration affixed to their award shall be competent to constitute a valid and binding award[.]" Section 158 is one of the provisions made applicable to the airline industry through section 181. Thus, the referee's decision of January, 1978, was, as he called it, a "draft" decision and never became "final and binding" on the parties.

◼ ALPA further argues that the referee had no authority to consider the motion for reconsideration, and that he thereby failed to comply with the requirements of the submission to him. It is clear that the arbitrator must follow any procedures set forth in the collective bargaining agreement or in the submission given to him by the parties. In the absence of express provisions, the arbitrator and the parties may agree on the procedures and manner of reporting the award. *Rushton v. Howard Sober, Inc.,* 198 F.Supp. 337, 341 (W.D.Mich.1961). In this case the express procedures say little. The only express requirement is that Referee Block's decision be final. But Block and the parties did agree that Block could reopen the hearing if he deemed it necessary. This provides authority for the rehearing procedure used

in this case. If the referee has the discretion to reopen the hearing, he implicitly also must have the discretion to determine how it should be reopened. Sending out a "draft" decision to the lawyers to test their reaction to it is one plausible–even if foolhardy–way to do so.

Further, the Eighth Circuit has made it clear that courts are not to second guess an arbitrator's decision on procedural matters. In *General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears Roebuck & Co.,* 535 F.2d 1072 (8th Cir. 1976), the Eighth Circuit reversed a district court's ruling that an arbitration panel exceeded its authority by applying an improper burden of proof. It stated:

While we are confronted with a challenge to arbitral application of an evidentiary rule concerning a standard of proof, courts have precluded review on either the substantive or procedural merits of an arbitration decision. . . . Because collective bargaining agreements are generally silent on procedural matters such as rules of evidence, an arbitration panel must be vested with the inherent authority to make procedural rulings. Otherwise, the national policy favoring arbitration of collective bargaining grievances would be frustrated. Supposedly "final" arbitration decisions would be relitigated in the federal courts.

*Id.* at 1076. This statement indicates that this Court should defer to Block's characterization of his January, 1978, decision as a "draft" and his procedural decision to rehear arguments on the merits.

◼ Finally, it cannot be said that Block's draft decision and rehearing procedure denied ALPA of due process of law. Block provided ALPA with ample opportunity to submit any further evidence and arguments that it wished to present. Although submitting a draft decision to the parties and taking additional arguments may be unusual in the field of arbitration, the Court concludes that the procedures used by Block have not denied ALPA of due process of law. *See generally, Rosen v. Eastern Air Lines, Inc.,* 400 F.2d 462 (5th

Cir. 1968), *cert. denied*, 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969).

### C. *Matters Decided by the Referee*

ALPA next contends that the referee exceeded the scope of his jurisdiction by issuing an award that violates statutory law, federal labor policy and the contract he was interpreting. It argues that Block used his own "mangled paraphrase" of the contract between NWA and ALPA to reach a result that is contrary to the intent of section 152 Eleventh of the Railway Labor Act, from which the language of subsection (a)(1) of the Supplemental Agreement is taken. It argues that his interpretation of the contract altered the terms of the Supplemental Agreement and thereby failed to give ALPA all that it had bargained for.

As discussed earlier, the Court cannot redetermine the merits of an arbitrator's award. It can set aside an award only if the arbitrator has ignored the agreement submitted to him and proceeded to "dispense his own brand of industrial justice," *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), or if his decision is "wholly baseless and completely without reason," *Gunther v. San Diego & Arizona Eastern Ry.*, 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); *see Brotherhood of Railway, Airline & Steamship Clerks v. Kansas City Terminal Ry.*, 587 F.2d 903, 906–908 (8th Cir. 1978); *Brotherhood of Railroad Trainmen v. Central of Georgia Ry.*, 415 F.2d 403 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970). Any ambiguity about the arbitrator's authority to render the decision he reached must be resolved in favor of the validity of the decision. *Western Iowa Pork Co. v. National Brotherhood Packinghouse and Dairy Workers, Local No. 52*, 366 F.2d 275, 277 (8th Cir. 1966). Referee Block conducted a thorough analysis of the contract submitted to him. This Court will not attempt to determine whether it would have interpreted the contract differently. It is sufficient that the Court concludes that the referee

rendered a rational interpretation of the contract submitted to him. Therefore, he did not exceed the scope of his jurisdiction.

Finally, ALPA urges that Referee Block failed to decide a submitted issue, and that the matter should be remanded for a decision on that issue. ALPA's argument runs as follows. Reynolds owed three types of payments to the union: the strike fund assessment of 1972 which precipitated the dispute between ALPA and Reynolds, the regular dues that each member of the union must pay, and the service charges that nonmembers of the union must pay to support the union. ALPA expelled Reynolds from the union for failure to pay the assessment, but requested that NWA discharge him for his failure to pay dues and service charges. ALPA argues that Block ruled only that the assessment was not "uniformly required as a condition of acquiring or retaining membership in the Association" and that therefore Reynolds could not be compelled to pay the service charge to the union because membership in the union "upon the same terms and conditions" as other members had been denied to him. But Block's opinion does not discuss the issue of dues. ALPA contends that when Block reconsidered his January, 1978, decision, he failed to rule on whether Reynolds could be discharged for the alleged nonpayment of delinquent dues owed at the time he was expelled.

Unfortunately, ALPA failed to raise this claim when it should have. Block invited ALPA to submit further arguments after he received Reynolds' motion for reconsideration. At no time between January and June of 1978 did ALPA suggest to Block that he had failed to rule on, or had ruled incorrectly on, the issue of dues delinquency.

Moreover, the Court finds that Block did rule on the issue of dues delinquency. Block's opinion does not expressly set forth his reasoning on this issue. But it is the award and not the opinion that must be examined. If the award decides the issues presented, the referee's decision cannot be attacked because the opinion is in-

complete. "Arbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *accord, Eastern Air Lines, Inc. v. Transport Workers Union, AFL–CIO, Local 553*, 580 F.2d 169 (5th Cir. 1978); *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404, 405 (9th Cir. 1974).

The complete text of Referee Block's award reads as follows:

> Based upon a careful consideration of all of the evidence and argument, it is the decision of the Neutral Referee that ALPA cannot compel the discharge of Captain Reynolds *for non–payment of dues and service charges* as specified in Joint Exhibit 2.

(Emphasis added). The dues specified in Joint Exhibit 2 are those that were alleged to be delinquent and owed by Reynolds prior to his expulsion from union membership. Because the award clearly deals with the issue ALPA claims was not decided, there is no merit to ALPA's argument.

## IV. CONCLUSION

The Court has reviewed all of the pleadings, affidavits, exhibits, and briefs submitted by the parties and all of the remainder of the file. It finds that there is no genuine issue as to any material fact herein, and that the defendants are entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY ORDERED:

1. That plaintiffs' motion for summary judgment be and hereby is denied.

2. That the motions for summary judgment by defendants NWA and Reynolds be and hereby are granted. The consolidated award of the System Board of Adjustment and the Neutral Referee dated June 14, 1978 (identified as Attachment A to the Affidavit of Steven D. Wheeler of June 5, 1980) is hereby declared to be final and binding on the parties. The plaintiffs' claim is hereby dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.