LOCAL P–9, UNITED FOOD AND COM-
MERCIAL WORKERS INTERNA-
TIONAL UNION, AFL–CIO, an unin-
corporated association, Plaintiff,

v.

GEORGE A. HORMEL & COMPANY,
a Delaware corporation, Defendant.

No. Civ. 4–83–683.

United States District Court,
D. Minnesota,
Fourth Division.

December 18, 1984.

David S. Anderson, Peterson, Bell & Con-
verse, St. Paul, Minn., and Robert H. Nich-
ols, Martha M. Mills, Cotton, Watt, Jones &
King, Chicago, Ill., for plaintiff.

David S. Doty, Popham, Haik, Schnob-
rich, Kaufman & Doty, Ltd., Minneapolis,
Minn., for defendant.

### MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on cross
motions for summary judgment. Plaintiff

seeks to vacate an "amended" arbitration award and confirm an "original" arbitration award. Defendant seeks an order affirming the amended award of the arbitrator. Plaintiff's motion will be granted.

**FACTS**

Plaintiff Local P–9, United Food and Commercial Workers International Union is the exclusive bargaining representative for the unit of production and maintenance employees at defendant Geo. A. Hormel & Company's meatpacking plant in Austin, Minnesota. The collective bargaining agreement between the parties establishes a grievance-arbitration procedure for the resolution of all disputes involving the meaning and application of the agreement. If the dispute involves the output required under a work schedule, a special arbitration procedure involving a direct time study by a qualified industrial engineer is provided for by the Contract. Collective Bargaining Agreement, Appendix A, Section IV. The agreement provides that "[t]he Award of the Arbitrator shall be final and binding on all parties concerned." Appendix A, Section IV–B–2.

On September 27, 1982, plaintiff filed a grievance challenging a newly issued work schedule for the processing of "Cure 81" hams. Plaintiff requested that the dispute proceed immediately to arbitration, and the parties selected James L. Reynolds, a qualified industrial engineer, to arbitrate the dispute. An arbitration hearing was held on March 9–10, 1983, and April 11, 1983. The issue before the arbitrator was whether or not the work schedules for the de-fatting, de-boning, and de-trimming operations on the "Cure 81" ham were based on the bench mark level of normal effective effort as defined in the collective bargaining agreement. More particularly, the issue was the calculation of "steeling time" (knife sharpening time) in the overall work schedule.

The arbitrator issued an eleven-page document titled "Opinion and Award" on May 17, 1983. This award discussed the time studies which the arbitrator had conducted, and ordered the following relief:

1. The work schedules for the Cure 81 Ham Processing operations, which are the subject of this arbitration, are not based on the bench mark level of normal effective effort defined in Section III of Appendix A of the Agreement.

2. The time standards and work schedules for the Cure 81 Ham Processing operations, which are the subject of this arbitration, are to be adjusted in accordance with Exhibit 19 of this opinion and award.

Opinion and Award, at 11. There is no indication on the face of the May 17, 1983 award that it was intended to be anything but a final award, although the arbitrator now claims that it was merely a provisional first draft. Affidavit of James Reynolds, October 23, 1984, ¶ 7. The letter from the arbitrator which accompanied the award contained the following statement:

If, after reviewing the award, the parties desire to discuss it, I would suggest the hearing be reconvened at 9:00 a.m. on Thursday, May 26, 1983 at the offices of the Company.

Letter from James Reynolds to David Gardner and Richard Schaefer, May 18, 1983.

Subsequent to receiving the above letter and award, defendant advised the arbitrator that it desired a meeting to discuss the award. This meeting was held on May 26, 1983. Defendant advised the arbitrator that it wished him to reconsider the award, and introduced evidence in support of its contention that the arbitrator's calculation of "steeling time" was contrary to past practices.[1] The defendant had not made an argument based on past practices at the first hearing, nor submitted any evidence regarding past practices. Plaintiff objected to a reconsideration of the award, claiming that the May 17 award was final and binding. Despite this objection, the arbi-

---

1. Defendant introduced a letter dated May 6, 1965 which was allegedly written by the plaintiff's International parent to the defendant's Industrial Relations Department. Plaintiff denied ever having seen this letter.

trator stayed his award and requested the parties to brief the past practice issue. The Union reiterated its objection to this reconsideration after the arbitrator's request for briefs, as well as in the brief which it subsequently submitted.

On June 16, 1983, the arbitrator issued an amended opinion and award in which he upheld the defendant's position with respect to past practice and reversed his earlier award. The arbitrator made the following comments regarding his decision to reconsider his May 17, 1983 award:

> An arbitrator retains authority to reconsider or change an award when it has been determined that an error on the face of the award may have been made. If a binding past practice exists which was not disclosed to the arbitrator, the arbitrator is empowered to review proof of its existence submitted by either party and to reconsider the award in light of his determination of the persuasiveness of that proof. Such a posteriori review is expressly appropriate when to not conduct such review would engender further dispute. For these reasons, the Arbitrator in this case has the authority to reconsider the award.

Amended Opinion and Award, June 16, 1983, at 3. Plaintiff now seeks to vacate this June 16, 1983 award and to confirm the original May 17, 1983 award. Defendant seeks the Court's order confirming the amended June 16, 1983 award.

## DISCUSSION

### 1. Applicable Law

■ The Court has jurisdiction over this matter pursuant to § 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185. Actions under this section are governed by federal common law. *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The Supreme Court held in *Lincoln Mills* that section 301 is not simply jurisdictional, but rather that it also re-

quires the federal courts to develop a body of federal law of collective bargaining, including the performance of arbitration clauses. The *Lincoln Mills* decision made it clear that "[f]ederal interpretation of the federal law will govern, not state law ... [b]ut [that] state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." *Id.* at 457, 77 S.Ct. at 918. *See also Local 1416, International Association of Machinists v. Jostens, Inc.,* 250 F.Supp. 496 (D.Minn.1966) (even if Minnesota Arbitration Act not per se applicable to labor arbitration action in federal district court, it is part of body of federal law available to court). The contention of both parties that the Minnesota Arbitration Act, Minn.Stat. § 572.08 *et seq.* is the applicable law in this case, then, is only partially correct. While the Court should look to the Minnesota Act to the extent that it is compatible with federal substantive law on arbitration, the Act does not supplant federal law, as the defendant argues.

### 2. Functus Officio

Plaintiff's argument that the amended award of June 16, 1983 should be vacated is based on the common law rule of arbitration known as *functus officio.*[2] The Court has recently recognized the viability of this doctrine in the federal common law of arbitration. *Air Line Pilots Association v. Northwest Airlines, Inc.,* 498 F.Supp. 613 (D.Minn.1980) (MacLaughlin, J.). The Court quoted the leading text on labor arbitration in its definition of the *functus officio* doctrine:

> It has been said to be "a general rule in common law arbitration that when arbitrators have executed their awards and declared their decision they are functus officio and have no power to proceed further." A detailed statement of this common law rule explains:
>
> "The authority and jurisdiction of arbitrators are entirely terminated by the completion and delivery of an award.

**2.** This term is translated literally to mean "a task performed." *Black's Law Dictionary,* 5th ed.

They have thereafter no power to recall the same, to order a rehearing, to amend, or to "interpret" in such manner as may be regarded as authoritative. But they may correct clerical mistakes or obvious errors in arithmetical computation."

*Id.* at 618, *quoting* Elkouri & Elkouri, *How Arbitration Works* 239 (3d ed. 1973) (footnotes omitted). *Accord LaVale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir.1967); *A/S Siljestad v. Hideca Trading, Inc.*, 541 F.Supp. 58, 61 (S.D.N.Y. 1981), *aff'd*, 678 F.2d 391 (2d Cir.1982). By prohibiting the arbitrator from re-examining the merits of an award, the doctrine of *functus officio* furthers the strong federal policy of finality in labor arbitration. *Air Line Pilots Association v. Northwest Airlines, Inc.*, 498 F.Supp. at 618; *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597–99, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The doctrine is also designed to prevent reexamination of an issue by a non-judicial officer potentially subject to outside communication and unilateral influence. *A/S Siljestad v. Hideca Trading, Inc.*

Plaintiff argues that the first award was a final award which could not be reconsidered under the *functus officio* doctrine. Defendant's first response is that the May 17, 1983 award was a draft rather than a final award. Second, defendant argues that even if the May 17 award was final, the arbitrator had the right to reconsider it under the Minnesota Arbitration Act.

### a. Finality of the May 17, 1983 Award

Plaintiff claims that it is beyond factual dispute that the May 17, 1983 arbitration award was final and binding on the parties. Defendant claims that the arbitrator intended for the May 17 award to be simply a draft opinion which was subject to modification upon objection by either party.

 Plaintiff presents strong evidence that the May 17 award was intended to be final and binding on the parties. First, the May 17 award indicated that it was being issued pursuant to Article IV, paragraph D of the collective bargaining agreement, which provides that "[t]he Award of the Arbitrator shall be final and binding on all parties concerned." Second, the text of the May 17 opinion and award gives absolutely no indication that it was intended to be a draft for discussion. The award was labeled "Opinion and Award." It was signed and dated by the arbitrator, which is a basic prerequisite to a final award. *See* Elkouri and Elkouri, *How Arbitration Works* 236–37; *Air Line Pilots Association*, 498 F.Supp. at 618–19. The language of the opinion itself strongly suggests that it was intended to be a final resolution of the dispute, rather than a tentative finding open to reconsideration:

An adjustment increasing the time standard and decreasing the work schedule was found to be necessary in order to comply with the level of effort defined in the Agreement. After taking the substantial number of observations recorded in the arbitrator's time studies, there is absolutely no doubt that such adjustment is required. The arbitrator is very aware of the keen competition in the food industry and the financial difficulties which have recently beset a nearby competitor of the Company. These concerns caused the arbitrator to be particularly cautious and careful in preparing the award. Each study was carefully checked for accuracy and consistency with all other studies. The award is presented with full confidence that it is correct.

Award of May 17, 1983 at 10.

A third fact pointing to the conclusion that the May 17 award was final is that the letter from the arbitrator which accompanied the award did not indicate that the award was a draft or that the arbitrator would accept new evidence; rather, it simply noted that the arbitrator would meet with the parties to "discuss" the award. Letter from James Reynolds to David Gardner and Richard Schaefer, May 18, 1983. Fourth, the "Amended Opinion and Award" of June 16, 1983 gives no indication that the initial award was merely a draft. Finally, a company representative's notes of a phone call with the arbitrator

several days after the original award state that the arbitrator indicated that the award was "final and binding," and that the May 26 discussion meeting was "[n]o forum to debate" and "not to adjust the award." Deposition of David Gardner, Defendant's Grievance Arbitration Representative, September 17, 1984, at 32.

In opposition to plaintiff's motion for summary judgment, defendant offers an affidavit by the arbitrator. In this affidavit the arbitrator asserts that he advised the parties at the initial hearing that his award would be of a provisional nature:

> At the initial meeting he indicated that he would be issuing an opinion and that, because it involved complicated observations, calculations and assumptions of various standards, he would be requesting that the parties be given an opportunity to present further materials at a reconvened hearing subsequent to the issuing of the draft Opinion and Award.

Affidavit of James L. Reynolds, October 23, 1984, ¶ 6. Second, the arbitrator contends that it was his intent that the May 17 award serve merely a draft:

> The initial Opinion and Award was sent to the parties on May 17, 1983. Although he signed and dated the Opinion, it was meant to only be a draft Opinion subject to further taking of evidence if it were found to be in error by either of the parties. It was his intention that, should the parties accept the Opinion, the initial Opinion would become the award. That did not happen.

*Id.*, ¶ 7.

■ If the Court were to consider the assertions in the arbitrator's affidavit, it would be compelled to deny the cross motions for summary judgment on the ground that there is a genuine factual issue as to whether the May 17, 1983 award was a final one. The Court has determined, however, that it will not consider the arbitrator's affidavit for the purpose of deciding the instant motions. Fed.R.Civ.P. 56(e) (affidavits in support of summary judgment motion "shall set forth such facts as would be admissible in evidence"). The Code of Professional Responsibility for Arbitrators of Labor-Management Disputes provides that after the award has been rendered, "[n]o clarification or interpretation of an award [by the arbitrator] is permissible without the consent of both parties." Part 6, § D1. The Court finds that post-award comments by arbitrators such as the ones made in the instant case are improper and inconsistent with the fundamental goals of finality and labor peace underlying the federal law of arbitration. *See Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276 (S.D.N.Y.1979) ("post-verdict" examinations of arbitrators for purpose of impeaching decision are roundly condemned). *See also Grudem Brothers Co. v. Great Western Piping Corporation*, 297 Minn. 313, 213 N.W.2d 920, 924 (1973) (an arbitration award "should be interpreted from the language used therein rather than the testimony of one of the arbitrators as to what they meant to do by the award"). Accordingly, the Court will not consider the arbitrator's affidavit in deciding the instant motions. Without this affidavit, the evidence admits of absolutely no doubt that the May 17, 1983 award was final and binding, so that the *functus officio* doctrine precluded the arbitrator from reconsidering the award.

**b. Reconsideration under the Minnesota Arbitration Act**

■ The Minnesota Arbitration Act provides for three fairly limited situations in which an arbitrator may "modify or correct" an award:

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Minn.Stat. § 572.20. These exceptions are not inconsistent with the main thrust of the *functus officio* doctrine—the principle that the arbitrator may not reconsider the merits of his decision once it is made. The defendant argues that the provision allowing for the arbitrator to change the award on the ground that there was an "evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award," *id.*, is applicable in the instant case. This argument is without merit. There was no simple mistake in arithmetic which the arbitrator corrected in his amended award. Rather, the arbitrator reconsidered the merits of the entire issue originally before him, on the basis of evidence relating to past practices which had not been before him at the time he issued his first award. This is precisely the type of reconsideration that is prohibited by the doctrine of *functus officio;* the statutory exception relied upon by defendant was clearly not intended to allow the arbitrator to accept new evidence and redetermine the merits of the controversy.[3] The use of the phrase "evident miscalculation" makes it clear that only those mistakes which are apparent on the face of the award may be corrected by the arbitrator. There was no such facial error in this case. *See Seaboard World Airlines, Inc. v. Air Transport Division, Transport Workers Union of America,* 460 F.Supp. 603 (E.D. N.Y.1978) (in common law arbitration, arbitrator can correct mistake apparent on face of award).[4] Accordingly, the *functus officio* doctrine prohibited the arbitrator from amending his May 17, 1983 award. The Court will therefore grant plaintiff's motion for summary judgment, vacate the "amended" arbitration award of June 16,

1983, and confirm the original arbitration award of May 17, 1983.

Based on the foregoing, **IT IS OR-DERED** that:

1. plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied;

2. the arbitration award dated June 16, 1983 is vacated and the arbitration award dated May 17, 1983 is confirmed.

LET JUDGMENT BE ENTERED AC-CORDINGLY.

---

**3.** The other two statutory exceptions to the *functus officio* doctrine both explicitly provide that reconsideration by the arbitrator should not reach the merits of the dispute, thereby suggesting that the "evident miscalculation" exception should be interpreted narrowly. Minn.Stat. §§ 572.20(2), (3).

**4.** Plaintiff argues that even if reconsideration of the award was appropriate, the defendant did not follow the procedures required by the Min-

nesota Arbitration Act. Section 572.16 of the Act requires the party seeking clarification of the award to give written notice to the opposing party, "stating he must serve his objections thereto, if any, within ten days from the notice." In view of the fact that the reconsideration of the award was improper under the *functus officio* doctrine, the Court does not reach this procedural question.