**TRANS WORLD AIRLINES, INC., Plaintiff,**

v.

**INDEPENDENT FEDERATION OF FLIGHT ATTENDANTS, Defendants.**

**No. 82 Civ. 2699 (PNL).**

United States District Court, S.D. New York.

May 6, 1983.

Poletti, Friedin, Prashker, Feldman & Gartner by Stanley Futterman, New York City, for plaintiff.

Jolley, Moran, Walsh, Hager & Gordon by Scott A. Raisher, Kansas City, Mo., for defendants.

### OPINION AND ORDER

LEVAL, District Judge.

Plaintiff Trans World Airlines, Inc. ("TWA") and defendant Independent Federation of Flight Attendants ("IFFA") each move for summary judgment on claim I of the complaint. That claim alleges that IFFA violated its obligations under the Railway Labor Act, 45 U.S.C. § 151 et seq., to "exert every reasonable effort ... to settle all disputes ...", 45 U.S.C. § 152 First, by failing to agree to submit to the Flight Attendant System Board of Adjustment, with Arthur Stark as Neutral Referee, a question concerning the rights of TWA and flight attendants.

Although the parties dispute the legal consequences of the relevant facts, they do not dispute the facts themselves. On October 11, 1978, TWA and IFFA entered into a collective bargaining agreement covering rates of pay, rules, and working conditions for TWA's flight attendants. That agreement is subject to the Railway Labor Act. Although the agreement expired by its terms on August 1, 1981, the rates of pay, rules, working conditions, and all other terms and conditions of employment established by the contract, remain in full force and effect.

Article 6–A(S) of the agreement provides that "[a]n employee shall not be required to remain on duty for more than fifteen (15) consecutive hours." That provision has been a part of each labor agreement between TWA and the representative of its flight attendants since 1967.

On June 14, 1971, TWA refused to release a flight crew from duty prior to the commencement of a flight segment during the course of which the crew would have exceeded the fifteen hour limit. Flight attendant Shirley Cardinal filed a grievance which was processed through the various grievance procedures created by the contract then in force. The grievance was finally submitted for final resolution by the Flight Attendant System Board of Adjustment, with Arthur Stark as Neutral Referee.

In that arbitration, TWA argued that it was not required to release flight attendants from duty until they actually exceeded fifteen consecutive hours. Thus TWA reasoned that it could insist that flight attendants serve on a flight leg if at the start of the leg the attendants had not yet completed fifteen hours on duty.

On February 13, 1973, the System Board ruled in favor of Ms. Cardinal and against TWA. The Board's order provided:

1. The Company violated Article [6–A(S)] by refusing to grant relief to the cabin crew of Flight 135 on June 14, 1971.

2. The Company shall henceforth comply with the Board's interpretation of Article [6–A(S)] with respect to situations involving anticipatory breaches, as set forth in the attached Opinion.

3. The Claimants shall be paid for one hour and 42 minutes at their incentive rates applicable as of June 14, 1971.

The opinion referred to in the second paragraph of the order was signed only by Arthur Stark, the neutral member of the panel. In that opinion, Mr. Stark concluded:

[The contract] is quite clear in its declaration that an employee "shall not be required to remain on duty for more than fifteen (15) consecutive hours." It does not specify when that requirement may be invoked; nor is there an exception which exempts situations of anticipatory breach. With a broad declaration such as this it was incumbent on Management to obtain a qualification if one was desired, in my judgment. But the clause is unqualified and there is no clarifying letter of agreement. Since the question at issue was not specifically discussed at the negotiations it cannot fairly be held that there was a meeting of minds on the exemption, although [TWA's negotiatior] may well have understood that to be the case.

Note further that, on June 14, 1971, there was apparently no compelling reason, such as lack of available personnel, for denying the crew's request for relief.

Stark Opinion at 4.

At least since 1974, TWA and IFFA and its predecessors have disputed whether the Stark interpretation of the contract leaves TWA free, where there is a "compelling reason," to require a flight attendant to depart on a flight if the attendant will complete fifteen consecutive hours of service before the flight is completed. IFFA and its predecessors have consistently maintained that notwithstanding the unavailability of substitute flight crews, TWA is obligated by the contract and the Stark opinion to discharge an attendant prior to the start of a flight segment during which the attendant would exceed fifteen consecutive hours on duty.

On Sunday, March 21, 1982, a TWA flight from West Palm Beach to Newark was substantially delayed due to mechanical difficulties. When the aircraft was finally ready for boarding, the members of the flight attendant crew, which had been scheduled for the earlier departure, refused to operate the aircraft, asserting that the flight would not be completed until after they had exceeded 15 hours of consecutive duty. This resulted in the cancellation of the flight. The parties dispute whether the crew correctly calculated that the fifteen hour limit would have passed prior to completion of the flight.

TWA sanctioned all members of the flight attendant crew. The union filed a grievance and the dispute is now before a Flight Attendant System Board.

By letter dated April 2, 1982, TWA requested that IFFA join with it in submitting to a System Board, with Arthur Stark as neutral referee, their dispute as to the meaning of the Stark opinion and Article 6–A(S) of the contract. IFFA refused, asserting among other things that the 1978 contract creates a panel of neutral referees to serve on System Boards and that Stark is not and has never been a member of that panel. IFFA suggested that the matter be submitted to a System Board panel established in accordance with the 1978 contract, including the panel constituted to hear the Palm Beach dispute. TWA then initiated this litigation, asserting as its first claim that IFFA breached its duty under the Railway Labor Act by refusing to agree to submit this dispute to a System Board with Stark as neutral referee.

*Discussion*

On two theories, TWA seeks an order of this court directing IFFA to agree to submit the dispute to a System Board with Stark as neutral referee.

*1. Duty to Exert Reasonable Efforts to Settle Disputes*

■ The Railway Labor Act imposes a duty on both TWA and IFFA "to exert every reasonable effort ... to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152 First, made applicable to carriers by air by 45 U.S.C. § 181. TWA argues that, faced with a dispute threatening commerce over the meaning of a 1973 System Board Award, TWA has proposed "a 'prompt and orderly,' and eminently 'reasonable,' means for settling the dispute—return to the System Board, sitting with the same Neutral Referee whose Opinion is in question, to ask what was intended by the words in dispute." TWA brief at 13. It contends IFFA's refusal to accept such reasonable suggestion was a violation of its duty to exert every reasonable effort to settle.

Assuming that TWA correctly characterizes its offer as a reasonable one, it certainly is not the only reasonable means to seek to settle the dispute. TWA makes no showing that IFFA's suggestion of submission either to the Palm Beach panel or to another panel established under the 1978 contract is unreasonable.

Although the Railway Labor Act requires carriers and unions "to exert every reasonable effort" to settle disputes, it does not require a party to agree to the adversary's suggested procedure. If it did, TWA would be in violation to the same extent as the union, for its refusal to accept the union's apparently reasonable suggestion. *See, e.g., Rutland Ry. v. Brotherhood of Locomotive Engineers,* 307 F.2d 21 (2d Cir.1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963); *American Airlines v. ALPA,* 169 F.Supp. 777 (S.D.N.Y.1958). IFFA is not required to agree to the particular reasonable procedure proposed by TWA any more than TWA is required to agree to the reasonable procedure proposed by IFFA.

*2. Remand of the Award*

TWA next argues that when, as here, there is a dispute among the parties to an arbitration award as to the proper interpretation of that award, the award should be remanded to the arbitrator for clarification and, if possible, should be remanded to the

same arbitrator. It argues that TWA and the union have a dispute over the interpretation of the 1973 *Cardinal* arbitration award and that it should therefore be remanded to the original panel for clarification.

I note at the outset that a remand of the *Cardinal* case does not seem appropriate. Stark's opinion was not ambiguous as TWA claims. It merely refrained from adjudicating an issue that was not raised in that proceeding. Arbitrator Stark noted that the *Cardinal* facts did not present the circumstance where there is a "compelling reason, such as lack of available personnel, for denying the crew's request for relief." Stark Opinion at 4. His opinion therefore did not determine what rights and obligations would obtain in those circumstances; it pointedly left those issues to be decided in future litigation when they arose.

This case is therefore not like *Courier-Citizen Co. v. Local 11,* 112 L.R.R.M. 3122 (1st Cir.1983) in which the arbitrator had not fully resolved the dispute before him. Furthermore, the *Courier-Citizen* arbitrator himself reopened the proceedings without remand by the court in order to complete his resolution of the dispute. *See id.* at 3124.

■ In any event, remand of the *Cardinal* case is time-barred. The Railway Labor Act does not expressly provide a statute of limitations for actions based on an award of a System Board. The timeliness of a suit seeking remand of a System Board decision must therefore be determined, as a matter of federal law, either by reference to the appropriate state statute of limitations, *see, e.g., United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981), or by reference to an analogous federal statute of limitations. In either event, an action for remand is subject to a time bar well short of the nine years that elapsed between the issuance of the *Cardinal* award and the commencement of this litigation.

Under New York law, a party to an arbitration award can seek clarification of the award through any of three procedures. Although different statutes of limitations apply to each of the procedures, none of the statutes of limitations authorizes an action to be brought more than one year after the award is issued. A party may apply to the arbitrator for modification of the award within twenty days after it is delivered, N.Y.Civ.Prac.Law and Rules § 7509, or he may apply to a court for modification of the award within ninety days after it is delivered, N.Y.Civ.Prac.Law and Rules § 7511, or he may wait for another party to apply to a court for confirmation of the award within one year after it is delivered and seek modification as a defense to the action for confirmation, N.Y.Civ.Prac.Law and Rules § 7510. Those appear to be the only procedures under New York law through which a party can seek clarification of an arbitration award. If as a matter of federal law, the New York statute of limitations applies to this case, it is clearly time-barred.

If instead of looking to state law for an analogous statute of limitations, it is appropriate to look to a federal statute, the claim is equally barred. The most appropriate federal statute of limitations appears to be the one set forth in 45 U.S.C. § 153 First (r), which provides:

> All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

Section 153 on its face applies to awards of a public Adjustment Board empowered under the Railway Labor Act to hear "minor" railway labor disputes. Given the similarity between the Adjustment Board and the private system boards created by the same Act to hear "minor" airline labor disputes, there is every reason to believe that the two year statute of limitations should apply to actions based on awards of airline system boards.

A cause of action for clarification of an arbitration award accrues no later than the date on which the dispute as to the meaning of the award manifests itself. TWA's argument that this "dispute manifested itself

anew in ... December 1981 and March 1982," TWA brief at 25, is untenable. IFFA and its predecessors made clear as early as 1974 that they interpreted the Stark opinion to require TWA to relieve flight attendants, regardless of the circumstances, before the start of a flight leg during which the attendants would exceed fifteen consecutive hours on duty. TWA also adopted its interpretation of its obligations at least as early as 1974.[1]

\* \* \*

TWA's motion is denied. Because there is no legal theory under which TWA would be entitled to relief on claim I of its complaint, IFFA's motion for summary judgment as to that claim must be granted.

In many cases, it would be inappropriate to grant summary judgment constituting a conclusive finding before trial that a party had complied with a statutory requirement of reasonableness. The possibility would remain that proof at trial might reveal unreasonableness in some respect. Here, however, TWA's claim is narrow and circumscribed. Its only basis for claiming failure on the part of IFFA to comply with the statute is IFFA's refusal to accept TWA's suggestion of reference to the Stark panel.

In opposing a motion for summary judgment, furthermore, a party must "set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. Rule 56(e).

TWA has set forth all of its facts. Indeed, the facts are not in dispute. Those facts do not admit of the possibility of judgment other than in favor of the union. Trial would add nothing.

Accordingly, the defendant's motion for summary judgment on claim I is granted.

SO ORDERED.

1. Even if the *Cardinal* matter were not time-barred, it would seem to be for the System Board and not for the court to determine which procedure should be followed on remand and whether the 1978 contract bars remand to a panel constituted in a manner that no longer conforms to the governing agreement. *Cf. Health Care Facilities Ass'n v. Local 144,* 106 L.R.R.M. 2176 (S.D.N.Y.1980). The System Board has exclusive primary jurisdiction to interpret the contract. *See La Rosa Sanchez v. Eastern Airlines,* 574 F.2d 29 (1st Cir.1978).