ASSOCIATION of FLIGHT ATTEND-ANTS, Plaintiff-Appellee,

v.

REPUBLIC AIRLINES, INC., Defendant-Appellant.

No. 85–2290.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1986.

Decided July 15, 1986.

Raymond J. Rasenberger, Zuckert, Scoutt, Rasenberger & Johnson, Washington, D.C., for defendant-appellant.

Mark B. Bigelow, Assoc. of Flight Attendants, Rosemont, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Republic Airlines, Inc. ("Republic" or the "company") reinstated a suspended attendance policy. The Association of Flight Attendants (the "AFA" or the "union") objected. The issue proceeded to a System Board of Adjustment which determined that Republic could not reinstate the policy without first bargaining with the union. Republic refused to comply with certain aspects of the award. The union sought a second hearing. The arbitrator's supplementary award reaffirmed continuing jurisdiction over attendance policy. Republic still refused compliance, saying the arbitrator exceeded his jurisdiction. The union sought judicial enforcement. The district court for the Northern District of Illinois found for the union, holding that Republic was time-barred from objecting to the arbitrator's jurisdiction and that the arbitrator had been within his jurisdiction in issuing the supplemental award. Republic appeals. We affirm.

Hughes Airwest Corp. ("Airwest"), Republic's predecessor, had a disciplinary policy to discourage excessive absenteeism. The AFA objected to this policy and brought suit before a System Board of Adjustment. The Board ruled in favor of the airline, saying that the policy helped further an important company interest. The union continued to be dissatisfied with

the rule. Eventually the company and the union agreed to a 90-day moratorium on the policy. The parties left unclear, however, what would happen at the end of the 90-day period.

After 90 days, the company was still unhappy with flight attendant absenteeism. It unilaterally decided to reinstate its former attendance policy. The union apparently was not informed of this decision at first. In November 1980, after the 90 days had elapsed but before the union was told of the company's decision, the company disciplined flight attendant Anna Ricco for repeated absence.

Ricco complained to her union, which filed a grievance on her behalf. The grievance complained that the company had no just cause to warn Ricco of excessive absenteeism. Other former Airwest employees complained about the attendance policy. When the grievance procedure failed to resolve the issue, the parties agreed to submit the question to arbitration. A second System Board of Adjustment was convened with Kenneth Cloke designated as head. In the arbitration proceedings, Republic acted as Airwest's representative. Republic had acquired Airwest in October 1980 and had assumed the Airwest-AFA contract.

In his initial award, Arbitrator Cloke described the question before him as whether the company could discipline for excessive absenteeism between April 14, 1980, the date Airwest's original policy was suspended, and February 21, 1981, the day the arbitrator determined the company formally notified the union the policy was being reinstated. In his initial award, the arbitrator concluded that since the company had received concessions from the union for imposing the moratorium, it could not reinstate the absenteeism policy without first negotiating with the union in good faith. The arbitrator stated, "since the company can be inferred, under the circumstances, to have agreed to negotiate over the *subject* of absenteeism, it may not reinstate its formal policy without negotiations." (Arbitrator's Initial Award, Appel-

lants' and Appellee's Joint Appendix at 43) (emphasis in original). The company was therefore ordered "to immediately cease and desist from giving effect to its unilaterally imposed absenteeism rules." *Id.* The company was also told to "restore generally the status quo that existed prior to the imposition of unilateral changes, including making whole and restoring employment as to any employee who may have been adversely affected by the unilateral imposition of February 2, 1981." *Id.* To assure compliance with the award, the arbitrator retained continuing jurisdiction over the matter.

Republic refused to give complete effect to the arbitrator's award. The company agreed to comply with the ruling as to attendance decisions made between April 1980—the time the attendance policy was suspended—and February 1981—the time the union was formally notified of the resumption of the policy. The company objected to the award, however, first, because, even though the arbitrator was aware that the grievance arose under the Airwest collective bargaining agreement and was limited to the April 1980—February 1981 time period, his award arguably applied to all Republic employees, including those flight attendants who were never covered by the Airwest agreement and, second, because the award appeared to cover grievances for the indefinite future.

In August 1983, the AFA wrote the arbitrator that it and Republic were unable to agree on the implementation of his award. The AFA requested a hearing. In January 1984, Republic informed the union for the first time that it believed the arbitrator no longer had jurisdiction over attendance policy. When the union threatened to move for *ex parte* judgment, Republic agreed to a two-part hearing under which the arbitrator would first determine whether he had jurisdiction over attendance policy before proceeding to the merits of the dispute. Republic informed the arbitrator that it wanted to limit the jurisdictional inquiry to the time between February 1981 and February 1982—when the initial award was

announced. Republic refused to submit to arbitration the question "whether or not the arbitrator retains jurisdiction in this case beyond February 1982." (Appellant's Brief at 11).

In issuing his supplemental award, the arbitrator stated:

> [T]he issue of subject matter jurisdiction is fundational [sic] in arbitration, as many forums may be invoked with a potential claim to adjudicatory authority. Yet it is axiomatic that objection to the jurisdiction of an arbitrator will be waived if it is not raised in a timely fashion.

(Arbitrator's Supplemental Award, Parties' Joint Appendix at 61–62.) The arbitrator determined that in waiting more than two years without objecting in court to the arbitrator's assumption of continuing jurisdiction over the attendance policy, Republic had waived its right to challenge jurisdiction. He also ruled that ignoring the question of timeliness, the jurisdictional issue concerning the attendance policy dispute was very complex and required a further hearing.

Republic refused compliance with the supplemental award, stating it exceeded the arbitrator's jurisdiction. The union filed suit to enforce the award in the district court for the Northern District of Illinois. Republic argued before the court that the supplemental award was jurisdictionally flawed because it was based on the arbitrator's retention of jurisdiction in the original award—an act which was beyond his authority. Republic argued that its objection was not untimely because timeliness questions did not apply to defenses. Republic also objected that the second award exceeded the agreed upon parameters for that proceeding. While Republic consented only to submit to the arbitrator the question of jurisdiction between February 1981 and February 1982, the award appears to retain jurisdiction for disputes arising after that date.

Both sides moved for summary judgment. The court found for the union. On the issue of timeliness, the court noted that no statute of limitations applied directly to the issue. However, the court applied by analogy the two-year statute of limitations contained in the section 153 of the Railway Labor Act, 45 U.S.C. § 153:

> [Republic] knew when the original award was received that the arbitrator had, in giving relief, gone beyond what Republic now argues was the limit on the arbitrator's jurisdiction. Republic also knew that the arbitrator had retained jurisdiction over enforcement of the award. Having failed to contest that award within the two years allowed by statute, Republic cannot be heard now to complain that in making it the arbitrator went beyond his powers.

*Republic Airlines, Inc. v. Association of Flight Attendants*, No. 85 C 64, Mem.Op. at 6 (N.D.Ill. June 28, 1985). The court ruled that statutes of limitation did apply to defenses in arbitration proceedings. It also found that the arbitrator could require Republic to arbitrate post-1982 attendance policy because such a ruling was a "minor dispute" requiring mandatory arbitration. Republic appeals this decision.

## I.

We agree with the district court that statutes of limitations apply to defenses raised in suits to enforce arbitration awards. In *Chauffeurs, Teamsters, Warehousemen and Helpers, Local No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981), a case under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, this court determined that the defendant's failure to move to vacate an arbitration award within the applicable limitations period barred it from raising flaws in the award as affirmative defenses to the plaintiff's suit to enforce the award. The court noted that the common law rule that statutes of limitations do not run against pure defenses did not apply because "an action to enforce an arbitration award is a creature of statute and was unknown at common law." *Id.* at 1027. Moreover, the defend-

ant in *Jefferson Trucking* was not raising a "pure defense" as had been envisioned by the common law maxim. Rather, it was seeking affirmative relief—vacation of the arbitration award—that it could have sought earlier. We find the circumstances of *Jefferson Trucking* analogous to those here. Republic could have challenged the arbitrator's assumption of broad jurisdiction in February 1982. Republic should not be rewarded for waiting until the AFA filed suit more than two years later.

## II.

■ Republic argues that even if statutes of limitations may ordinarily apply to defenses in actions to enforce arbitration awards, they should not apply to challenges to rulings of system boards of adjustment. Republic contends that by not providing for a specific statute of limitations to govern questions involving rulings of system boards Congress expected the parties to arbitration proceedings to contractually establish their own time limits. But there is nothing to indicate that this was the intent of Congress. Rather, as the Supreme Court stated in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), when Congress is silent as to the appropriate limitations period:

> [Courts] do not ordinarily assume that Congress intended that there be no time limit on actions at all. Rather, our task is to "borrow" the most suitable statute or other rule of limitations from some other source.

*See also Stevens v. Gateway Transportation Co.*, 696 F.2d 500, 503 (7th Cir.1982) ("That Congress has not enacted a statute of limitations expressly governing plaintiffs' claims does not mean that national interests are any less implicated by the choice of an appropriate limitations period than if Congress had enacted such a statute."), *cert. denied*, 452 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1368 (1983).

## III.

Having determined that Republic's claims would be subject to a statute of limitations, we must then determine which statute of limitations is appropriate. Republic contends that Illinois' five-year statute for general civil litigation should apply. The AFA responds that there is no reason why an Illinois statute should apply because the action arose out of events in California and the System Board of Adjustment sat in California. If, on the other hand, any Illinois statute applies, the AFA suggests that it should be the 90-day limitation period for vacating arbitration awards.

■ The district court applied by analogy the two-year period of section 153 of the Railway Labor Act. We believe this choice was correct. In 1936, Congress extended much of the Railway Labor Act to the then-fledgling airline industry. "Its general aim was to extend to air carriers and their employees the same benefits and obligations available and applicable to the railroad industry." *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963). Section 153—which provides that railroad labor disputes go before the National Railroad Adjustment Board—was not applied to the airline industry. Congress did not want airline labor controversies to go before the railroad board. Instead, it wanted airlines and airline labor to create system boards of adjustment particularly suited to their industry until Congress could decide whether a National Air Transportation Board was necessary. *Id.*

Congress' decision not to apply section 153 to the airlines, then, does not reflect any belief that that statute's limitations period was inappropriate for the airline industry. On the contrary, other courts have found section 153's limitations period a suitable analogy for challenges to rulings of system boards of adjustment. *See Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 563 F.Supp. 1197, 1200 (S.D.N.Y.1983) ("there is every reason to believe that the two year statute of limitations [in section 153] should apply to actions based on awards of

airline system boards"); *Gordon v. Eastern Airlines Inc.*, 268 F.Supp. 210, 213 (W.D.Va.1967) ("Having decided to apply uniform federal law in this matter, it is easy to go one step further and assume that Congress intended the airline industry disputes to have the same statute of limitations as do the disputes in the rail industry.").[1]

Section 153's limitations period helps further the national interest in the swift resolution of transportation industry labor disputes. *See Machinists v. Central Airlines*, 372 U.S. at 687, 83 S.Ct. at 959 ("Congress has long concerned itself with minimizing interruptions in the nation's transportation services by strikes and labor disputes.") By contrast, this circuit has found Illinois' five-year general statute of limitations inappropriate for disputes involving the transportation industry. *See Stevens v. Gateway .Transportation*, 696 F.2d at 503; *cf. United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 64, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981) ("This system, with its heavy emphasis on grievance, arbitration and the 'law of the shop' could easily become unworkable if a decision which has given 'meaning and context' to the terms of an agreement, and even affected subsequent modification of the agreement, could suddenly be called into question as much as six years later.")

■ Therefore, while Republic may have had a claim that the arbitrator overstepped his bounds in arguably applying his ruling to all Republic flight attendants and in

retaining jurisdiction, the company waived its right to challenge this ruling by waiting more than two years without proceeding with a judicial action.

## IV.

The lower court determined that questions concerning post-1982 attendance policy were "minor disputes" under the Railway Labor Act and thus subject to mandatory arbitration.[2] The court also determined that the question of who would arbitrate that issue was also a minor dispute because it depended on an interpretation of the parties' collective bargaining agreement.

Republic argues that in so ruling the court abdicated its responsibility to determine if the arbitrator acted within his jurisdiction. As a result, Republic contends, the union is able to sidestep provisions in the new collective bargaining agreement for informally resolving grievances and for consensually structuring arbitration panels when these informal procedures fail.

It is certainly true that even where it is the arbitrator's task to resolve the merits of a dispute it remains the court's duty to determine the scope of the arbitrator's jurisdiction. *See AT & T Technologies, Inc. v. Communications Workers of America*, —— U.S. ——, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is unde-

---

1. Some courts have opted for an even shorter limitations period for airline industry labor disputes. *See Barnett v. United Airlines, Inc.*, 738 F.2d 358 (10th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984) (applying by analogy 6-month limitations period in § 10(b) of National Labor Relations Act, 29 U.S.C. § 160(b)); *Richey v. Hawaiian Airlines, Inc.*, 533 F.Supp. 310, 313 (M.D.Ga.1982) (action filed 9 months after arbitration award held untimely).

2. The Railway Labor Act defines three classes of labor disputes. 45 U.S.C. § 184. "Representation" disputes concern the composition of the collective bargaining unit. "Major" disputes concern the formation of the collective bargaining agreement. "Minor" disputes are those

which involve disagreements over the application of interpretation of an existing collective bargaining agreement:

"Minor" disputes are committed to a grievance-arbitration process before a system board of adjustment, which is the "mandatory, exclusive and comprehensive system for resolving grievance disputes." 45 U.S.C. § 184. Neither federal nor state courts have jurisdiction to interpret labor contracts subject to the Act; that function is assigned exclusively to the system boards of adjustment. *International Brotherhood of Teamsters v. Texas International Air*, 717 F.2d 157, 158–59 (5th Cir. 1983) (footnote omitted); *see Barnett v. United Airlines, Inc.*, 738 F.2d at 361.

**358**

niably an issue for judicial determination."); *Barnett v. United Airlines, Inc.,* 738 F.2d at 361 (court should examine whether system board complied with requirements of Railway Labor Act and whether system board lacked jurisdiction).

However, a court will only examine questions of the arbitrator's jurisdiction when they are raised in a timely fashion. Here they clearly were not and we need not address whether the district court was correct in labeling Republic's challenges "minor disputes."

The judgment of the court below is hereby AFFIRMED.