**Kenneth D. HENEGAR,**
**Plaintiff–Appellant,**

v.

**William M. BANTA, Defendant–Appellee.**

No. 93–3315.

United States Court of Appeals,
Sixth Circuit.

Argued March 21, 1994.

Decided June 21, 1994.

Robert B. Thompson (argued and briefed), Harrington, Thompson, Acker & Harrington, Chicago, IL, for plaintiff-appellant.

Gregory V. Mersol (argued), John Lewis (briefed), and Lois J. Cole, Arter & Hadden, Cleveland, OH, for defendant-appellee.

Before: RYAN and NORRIS, Circuit Judges; and BERTELSMAN, Chief District Judge.*

RYAN, Circuit Judge.

In an order granting summary judgment, a federal district court dismissed Kenneth D. Henegar's defamation suit against William M. Banta, his former superior at the Norfolk and Western Railway Company, 817 F.Supp. 668. Henegar has appealed and presents us with a single issue: whether the district court erred in concluding that Henegar's defamation claim was "inextricably intertwined" with the collective bargaining agreement between Henegar's union and the railroad, and consequently, was preempted under the Railway Labor Act. 45 U.S.C. § 151 *et seq.* We think the district court did not err and we affirm.

## I.

Henegar was a brakeman for Norfolk and Western Railway Company; Banta was his supervisor. Henegar's employment was governed by a collective bargaining agreement between his union, the United Transportation Union, and Norfolk and Western. On Feb-

ruary 4, 1991, Henegar began to suffer stomach pains while at work. He drove himself to the hospital and there he was told that he had a hernia. Banta met Henegar at the hospital and then drove him back to work. Banta claims that during the drive back, Henegar said that he had known for some time that he had a hernia but was afraid to have surgery.

Subsequently, Henegar had his hernia repaired and filed a claim with the railroad, alleging that the hernia was a work-related injury. Upon learning of this, Banta charged Henegar under the collective bargaining agreement with giving false and conflicting statements about his alleged injury. The railroad scheduled a hearing to investigate.

At the hearing, Banta testified that Henegar told him that he had been aware of the hernia for at least one year. The railroad also introduced hospital records which indicated that Henegar had long been aware of the hernia. The hearing officer found that Henegar's claim of a work-related injury was inconsistent with the hospital records and the statements he made to Banta. Based on this finding, the hearing officer dismissed Henegar from his railroad employment. On appeal, a public law board affirmed.

Henegar then filed the diversity action in federal district court alleging that Banta had defamed him by making false statements at the hearing and in an accident report and other memoranda. Henegar's evidence was primarily Banta's notes regarding the incident and two copies of a "Report of Personal Injury/Illness Incident," both dated February 4, 1991.

Banta moved for summary judgment, which the district court granted, after concluding that Henegar's defamation claim was preempted by the Railway Labor Act because it was "inextricably intertwined" with the collective bargaining agreement. Now, on appeal, Henegar claims the district court erred in concluding that the defamation suit was preempted because the determination of Henegar's state law claim will not require an

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

interpretation of the collective bargaining agreement.

## II.

■ We review a grant of summary judgment *de novo* and use the same test as used by the district court. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings, and by affidavits, or by " 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

## III.

■ The Railway Labor Act (RLA) governs labor relations in the railroad industry. The RLA does not explicitly address the issue of preemption but it does set out some general purposes:

(1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a. As part of its mandate, the RLA directs employers and employees in the railroad industry to resolve most job-related disputes without recourse to the courts. *Id.* at §§ 152, 153.

The RLA ... provides a comprehensive framework for the resolution of labor disputes in the railroad industry ... [by] establish[ing] elaborate administrative procedures for the resolution of both major and minor labor disputes.... Minor disputes initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties.

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562–63, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987)(footnote omitted).

■ The RLA gives the National Railroad Adjustment Board (NRAB) exclusive jurisdiction over "minor" disputes that arise out of collective bargaining agreements. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93–94, 99 S.Ct. 399, 402–03, 58 L.Ed.2d 354 (1978)). A dispute is "minor" under the RLA if it grows " 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.' " *Atchison*, 480 U.S. at 563, 107 S.Ct. at 1414 (quoting 45 U.S.C. § 153(i)). "The final and exclusive jurisdiction of the Board has a broad sweep; no grievance that may fairly be said to stem from the collective bargaining agreement is excluded." *Beard v. Carrollton R.R.*, 893 F.2d 117, 121 (6th Cir. 1989).

■ In certain instances, the NRAB's exclusive jurisdiction over minor disputes will preempt an employee's state law claim. In *Stephens v. Norfolk and Western Railway Co.*, 792 F.2d 576 (6th Cir.1986), this circuit announced a test for determining whether a state cause of action is preempted under the

RLA: "If the 'action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.,' exclusive jurisdiction of the NRAB preempts the action." *Id.* at 580 (quoting *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)).

Other courts have held that the RLA preempts state law claims based on libel and slander. In *Edelman v. Western Airlines, Inc.*, 892 F.2d 839 (9th Cir.1989), an airline fired a flight attendant for stealing. The flight attendant sued for, among other things, defamation. The Ninth Circuit held that her defamation claim was inextricably intertwined with the collective bargaining agreement because, in assessing the validity of the claim, the court would have "to analyze the Agreement to decide whether Edelman's discharge was justified." *Id.* at 844.

In *Miller v. Norfolk & Western Railway Co.*, No. 89–4101, 1990 WL 163302, at *4, 1990 U.S.App. LEXIS 19129, at *7 (6th Cir. Oct. 25, 1990), we held that the RLA preempted an employee's claim that his supervisor made defamatory remarks about him during a disciplinary investigation. We reasoned that because the alleged defamatory statements were accusations made during an investigation and hearing conducted under a collective bargaining agreement, the defamation claim was inextricably intertwined with the collective bargaining agreement:

> The exclusive jurisdiction of the NRAB over minor disputes was created "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. If we were to permit a claim like the plaintiff's to evade the jurisdiction of the board, "the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the

courts, would be thwarted." *Magnuson*, 576 F.2d at 1369. Claims that relate to matters covered in or by grievance proceedings must be preempted by the RLA, or else they will have a chilling effect on these proceedings. The inquiry, therefore, must focus on the claim's relation to the proceedings under the [collective bargaining agreement] as a whole, and not on whether specific issues would be addressed in both the state law claim and the grievance proceedings.

*Id.* at *5, 1990 U.S.App. LEXIS 19129, at *14–15.

■ The same reasoning applies here. The alleged defamatory statements in this case were Banta's accusations that Henegar was *not injured on the job but rather that he* suffered from a prolonged, preexisting illness. Banta made these statements in the course of an investigation of Henegar's personal injury claim. The investigation and the hearing were conducted in accordance with the collective bargaining agreement. Consequently, we conclude that the district court did not err in holding that Henegar's defamation claim was inextricably intertwined with the collective bargaining agreement and preempted under the RLA.

■ Henegar argues, however, that under *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a state law claim is preempted only if the action requires interpretation of the collective bargaining agreement. *Lingle*, however, dealt with preemption under the National Labor Relations Act, and we have declined to extend *Lingle* beyond NLRA cases. *See Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1334–35 n. 4 (6th Cir.)(*en banc*), *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). On reviewing both the RLA and the NLRA, the Supreme Court has observed: "the analysis ... under each statute is quite distinct." *Buell*, 480 U.S. at 565, 107 S.Ct. at 1415. In short, preemption under the RLA is more pervasive.[1] *See, e.g., Underwood v. Venango*

---

1. *McCall v. Chesapeake & Ohio Ry. Co.*, 844 F.2d 294 (6th Cir.), *cert. denied*, 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), an RLA case, was decided before *Lingle*. A subsequent order denying rehearing in that case states that *Lingle* would not change the result of that case; the order says nothing more. *Id.* at 304.

*River Corp.,* 995 F.2d 677, 680–81 (7th Cir. 1993); *Lorenz v. CSX Transp., Inc.,* 980 F.2d 263, 268–69 (4th Cir.1992); *Hubbard v. United Airlines, Inc.,* 927 F.2d 1094, 1097 (9th Cir.1991). The language of the RLA itself is broader in that it purports to cover "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements." 45 U.S.C. § 153(i). The NLRA, in contrast, is limited to the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). In sum, we decline to extend *Lingle* to an RLA case. But even under *Lingle,* there would be preemption on the facts of this case because an "'unprivileged publication'" is an element of defamation in Michigan, *New Franklin Enterprises v. Sabo,* 192 Mich.App. 219, 480 N.W.2d 326, 328 (1991)(citation omitted), *appeal denied,* 439 Mich. 951, 482 N.W.2d 760 (1992), and to determine whether Banta's remarks are privileged, a court would inevitably have to interpret the terms of the collective bargaining agreement since Banta allegedly made these statements during a grievance proceeding mandated by the collective bargaining agreement.

Accordingly, we **AFFIRM.**