**Courtney EDWARDS, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Independent Pilots Association and MLI Dissolution, Inc., Defendant.**

**Civil Action No. 3:96CV–427–S.**

United States District Court,
W.D. Kentucky.

Aug. 15, 1997.

James D. Howes, Louisville, KY, for Courtney Edwards.

Tony C. Coleman, Raymond C. Haley, III, Carole J. Catalfo, Westfall, Talbott & Woods, Louisville, KY, for United Parcel Service.

Frank F. Chuppe, Wyatt, Tarrant & Combs, Louisville, KY, for Independant Pilots Association.

Galen J. White, Jr., Boehl, Stophers & Graves, Louisville, KY, for MLI Dissolution, Inc.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

Courtney Edwards lost his job as a pilot for United Parcel Service ("UPS") after a

positive random drug test. Arbitration ensued, but the outcome was unfavorable to Edwards. On June 19, 1996, Edwards filed this lawsuit against UPS, the Independent Pilots Association (Edwards' union), and MLI Dissolution, Inc. (the successor corporation to Medtox Laboratories, the laboratory that performed the drug test). Before the court are (a) UPS' motion to dismiss Edwards' breach of contract claim and employment discrimination claim and (b) cross-motions by Edwards and UPS for summary judgment on Edwards' request to set aside the result of the parties' arbitration. We find that: (1) the breach of contract claim against UPS is barred by the six-month limitations period for such claims; (2) the employment discrimination claim fails because Edwards never exhausted administrative procedures; and (3) Edwards' request to set aside the arbitration award should be granted because the hearing and issuance of the award failed to satisfy the requirements for a valid award under the Railway Labor Act.

## FACTS

Courtney Edwards was employed as a pilot by UPS until June 6, 1994. On May 12, 1994, Edwards was given a Federal Aviation Administration-mandated random urine drug test. Medtox Laboratories, Inc. (now MLI Dissolution, Inc.) reported that Edwards' urine tested positive for glutaraldehyde, an active ingredient in an adulterant called UrinAid which is used to mask drugs from urine drug tests. Under the parties' collective bargaining agreement, UPS was permitted to terminate Edwards for refusing an FAA drug test. See Letter of Agreement # 5. UPS terminated Edwards based on the Medtox analysis, deeming the presence of adulterants tantamount to a "refusal to test."

Edwards' union, the Independent Pilots Association (IPA), filed a grievance protesting the dismissal. The grievance proceeded to arbitration before the IPA/UPS Arbitration System Board (the "Arbitration Board") with Edwards represented by IPA. Hearings were held on November 11, 1994 and January 3, 1995 in which both sides developed

expert testimony regarding the reliability of Medtox's testing procedures.

In the test, Medtox collected Edwards' urine sample in two containers: sample "A" and sample "B." Medtox initially tested only sample "A", as prescribed by the union's agreement with UPS. After testimony at the first round of arbitration, the Arbitration Board ordered that sample "B" be tested for adulterants to verify the results of sample "A." This second test also indicated the presence of glutaraldehyde.

At Edwards' request, he was given an additional day to testify before the arbitration panel. During this testimony on September 8, 1995, Edwards stated that he was using a medicated gel to topically treat genital warts on the date he gave the urine sample. This gel contained glutaraldehyde. Edwards claimed that some gel must have fallen into his sample's container. UPS countered with expert testimony that fully one-fourth of an entire tube of the gel would have to have fallen into the container to produce the resulting concentration of glutaraldehyde.

The dispute was presented to a five-member Arbitration Board: two members nominated by the company, two by the union, and one neutral (the "Arbitrator"). The hearings began with five board members, but one member from each side was replaced during the course of the arbitration, such that only three board members actually heard the entire matter.

On September 29, 1995, the Arbitrator rendered an opinion denying the grievance and upholding Edwards' dismissal. The arbitration award was authored and signed only by the Arbitrator. Edwards filed this four-count lawsuit alleging that UPS breached a collective bargaining agreement (Count II); that IPA breached its duty of fair representation (Count III); that UPS racially discriminated against Edwards (Count II); that Medtox negligently handled the urine testing (Count IV), and requesting that the Arbitration Board's decision upholding Edwards' termination be set aside (Count I).[1]

---

**1.** In a Memorandum Opinion and Order entered October 21, 1996, we granted IPA's motion to dismiss the complaint as to it on the grounds that

Edwards' "fair representation" claim was time-barred. [Docket No. 15]. Medtox remains a defendant, and is not involved in these motions.

## DISCUSSION

Three claims are at issue in the motions presently before us: (1) a claim against UPS for breach of the collective bargaining agreement; (2) a claim against UPS for employment discrimination; and (3) a petition to set aside the Arbitration Board's decision upholding Edwards' termination. We will address these three claims separately.

### I. The Breach of Contract Claim

UPS moves for a dismissal of Edwards' breach of contract claim. On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), we must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle him to relief. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993).

Count II of the complaint alleges that UPS breached the collective bargaining agreement in its handling of Edwards' testing and discharge. Edwards grieved the discharge through the procedure established in the collective bargaining agreement. The grievance was finally denied by the Arbitration Board on September 29, 1995. This lawsuit was filed June 19, 1996—almost nine months later. UPS argues that this claim should be dismissed because it is untimely. UPS then argues that, even if not untimely, breach of contract claims arising out of the collective bargaining agreement are pre-empted by the arbitration provisions of the Railway Labor Act. We agree with UPS on both accounts.

### A. The Suit is Untimely

The Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*[2] does not include an explicit limitations period applicable to claims against employers for breach of contract. The Labor Management Relations Act ("LMRA") includes a six-month limitations period for unfair labor practices (29 U.S.C. §§ 160(b)), which is applied to LMRA claims against both employers for breach of the collective bargaining agreement and unions for breach of their duty of fair representation. See *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This six-month limitations period has also been applied to such claims under the RLA. *See, e.g., Kozy v. Wings West Airlines*, 89 F.3d 635, 640 (9th Cir.1996); *Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 526 (5th Cir. 1985). We, too, applied this six-month period in our October 1996 ruling on this subject.

As we indicated in that ruling, this limitations period begins to run when a plaintiff "knows or should have known of the union's alleged breach of its duty of fair representation." *See* Mem. Op. and Order (Oct. 21, 1996) (dismissing Edwards' complaint against IPA for breach of the agreement) (*citing DelCostello, supra, and Dowty v. Pioneer Rural Electric Co-op, Inc.*, 770 F.2d 52, 56 (6th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985)). Edwards' claim here, like a fair representation claim, arises no later than when a grievance is finally denied, unless facts are fraudulent concealed so as to make them undiscoverable. For the same reasons we rejected Edwards' arguments when we dismissed the complaint as to IPA on October 21, 1996, we find that Edwards' breach of contract claim against UPS was filed too late.[3]

### B. Pre–Emption of Breach of Contract Claims

We also find that Edwards' breach of contract claim against UPS necessarily involves an interpretation of the collective bargaining agreement. As such, it is pre-empted by the exclusive jurisdiction of the

2. Congress expressly made all of the provisions of the RLA (except 45 U.S.C. § 153) applicable to air carriers engaged in interstate or foreign commerce. 45 U.S.C. § 181.

3. Edwards argues that we should not dismiss his breach of contract claim against UPS because, if we vacate the Arbitration Board's decision as Edwards requests, then the six-month limitations period would be inoperative. We are directed to no authority suggesting that vacating an Arbitration Board's ruling somehow "tolls" the limitations period for a breach of contract claim against an employer or breach of fair representation claim against a union. Rather, Edwards' only recourse is to impeach the Arbitration Board's decision and seek a re-hearing. *See infra, III.*

Arbitration Board with regard to such disputes.

Generally, the RLA recognizes two types of disputes: (1) "major" disputes, which relate to the formation of collective bargaining agreements or efforts to secure them, and (2) "minor" disputes, which involve the application or interpretation of a collective bargaining agreement to a particular set of facts. *See Barnett v. United Air Lines, Inc.,* 738 F.2d 358, 361 (1984). "Minor" disputes arise when an employer takes action that is "arguably justified by the terms of the parties' collective bargaining agreement." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 307, 109 S.Ct. 2477, 2483, 105 L.Ed.2d 250 (1989). System boards of adjustment—such as the Arbitration Board here—have exclusive jurisdiction to resolve claims which are dependant on the interpretation of a collective bargaining agreement. *See* 45 U.S.C. § *184; Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

Edwards' breach of contract claim is clearly dependent on the interpretation and analysis of the collective bargaining agreement. *See* Complaint, ¶ XVIII. With the exception of a reference to employment discrimination, Count II attacks UPS' conduct as violative of the collective bargaining agreement. Count II is replete with references to specific provisions of the agreement, and we do not see how Edwards could expect us *not* to interpret the agreement were we to rule that UPS did or did not breach its provisions

Edwards may attempt to impeach the Arbitration Board's decision (*see infra,* III), but may not maintain this breach of contract lawsuit. *See Capraro v. United Parcel Service Co.,* 993 F.2d 328 (3d Cir.1993) (pilot's claims of wrongful discharge and breach of contract in violation of collective bargaining agreement was a "minor dispute" under RLA, thus requiring submission to adjustment board rather than court). Therefore, Edwards' breach of contract claim will be dismissed as both untimely and pre-empted.

## II. The Employment Discrimination Claim

■ Although not entirely clear, Count II also appears to allege employment discrimination by UPS. *See* Complaint, ¶ XVIII(h).

The parties agree that we should dismiss Edwards' claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* for failure to exhaust administrative remedies. Edwards neither sought nor obtained a right-to-sue letter from the EEOC. Thus, we are without jurisdiction to entertain such a suit. *Jones v. Truck Drivers Local 299,* 748 F.2d 1083, 1086 (6th Cir.1984); *Lowe v. City of Monrovia,* 775 F.2d 998, 1003 (9th Cir.1985). Edwards' claim for employment discrimination will be dismissed.

## III. Edwards' Petition to Set Aside the Arbitration Board's Decision

Count I of Edwards' complaint is a petition to review the decision of the Arbitration Board. Edwards has filed a motion for summary judgment claiming that the process and Opinion suffered from a number of fatal deficiencies which require us to declare them invalid. UPS also moves for summary judgment on the petition arguing, *first,* that a petition to set aside an award is subject to a six-month limitations period, and, *second,* that the Arbitration Board committed no "reversible" error in view of the extremely narrow scope of judicial review of arbitration board decisions. We disagree with UPS on both accounts.

As there appear to be no genuine issues of material fact in dispute regarding the proceedings before the Arbitration Board, this matter is proper for disposition on the parties' cross-motions for summary judgment. Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986), the Supreme Court noted that Rule 56(c) asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Summary judgment is appropriate where there is no genuine issue of material fact in the case

which requires a trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A. The Limitations Period

The RLA applies to labor relations in both the rail and air carrier industries. Subchapter I (regarding railroads) includes an explicit two-year statute of limitations for seeking judicial review of an arbitration award. 45 U.S.C. § 153 First (r). Subchapter II (regarding air carriers) contains no explicit statute of limitations for such petitions. Subchapter II does, however, expressly state that Section 153 is *inapplicable* to air carrier labor disputes. 45 U.S.C. § 181. Thus, there is no express statutory limitations period applicable to this case.

■ UPS argues that the six-month statute of limitations period applicable to RLA and LMRA contract and fair representation claims should also apply to petitions to set side an arbitration board's decision. We opt, instead, to follow the approach of the Seventh Circuit in *Ass'n of Flight Attendants v. Republic Airlines,* 797 F.2d 352 (7th Cir.1986). There, the court of appeals upheld the district court's application of the two-year period in Section 153 First (r). *Id.* at 357. The court reasoned that just because Congress chose not to apply Section 153's arbitration mechanism for the National Railroad Adjustment Board to the *air carrier* industry does not evince an intent to abandon Section 153's limitations period for what is essentially the same cause of action.

Therefore, we apply the two-year limitations period in Section 153 First (r) to arbitration under the air carrier provisions of the RLA. *Accord Trans World Airlines, Inc. v. Independent Federation of Flight Attendants,* 563 F.Supp. 1197, 1200 (S.D.N.Y. 1983) ("there is every reason to believe that the two year statute of limitations [in section 153] should apply to actions based on awards of airline system boards"); *Gordon v. Eastern Air Lines Inc.,* 268 F.Supp. 210, 213 (W.D.Va.1967) (same).

## B. Reviewing the Board's Decision

The RLA reflects a congressional intent "to provide a separate and distinct statutory scheme for labor disputes" in the rail and air carrier industries. *Barnett,* 738 F.2d at 361. The RLA requires air carriers and their employees' unions to establish system boards of adjustment to resolve disputes involving the application or interpretation of collective bargaining agreements. 45 U.S.C. § 184. Section 184 of the RLA states that the jurisdiction of airline boards shall be co-extensive with the jurisdiction of system, group, or regional boards of adjustment under the rail carrier provisions of Section 153. Therefore, judicial review of a Section 184 system board of adjustment decision has been conducted in the same fashion as judicial review of Section 153 railroad board decisions.

The collective bargaining agreement between UPS and IPA provides for two separate bodies to hear grievances. A "System Board of Adjustment" is the body before which most grievances are initially heard. A System Board of Adjustment consists of four members: two selected by the company and two by the union. In the event of a "deadlock" among this four-member board, Article 7(E)(5) calls for a five-member *"Arbitration System Board of Adjustment."* Article 7(E)(6) contains detailed provisions for selecting this "tie-breaking" member of the panel, who is called the "Arbitrator."

In the case of a grievance arising from discharge, Article 7(C)(5) allows the grievance to bypass the four-member board and proceed directly to the Arbitration System Board of Adjustment. In this case, Edwards' grievance went straight to the five-member board.

### 1. Standard of Review

When one party is dissatisfied with the decision of an arbitration board, that party may file in United States District Court a petition for review of the Arbitration Board's award. The grounds Section 153 First (q) of the RLA for setting aside an order of the Board have been held applicable to airline board decisions. *See, e.g., Hunt v. Northwest Airlines,* 600 F.2d 176, 178 (8th Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979). A court may affirm the award, set it aside (in whole or in part), or remand it to the board for further action. Crucially, our judicial review may be invoked only where: (1) the board failed to

comply with the requirements of the RLA; (2) the board exceeded its jurisdiction; or (3) there was fraud or corruption by the board. 45 U.S.C. § 153 First (q). The Supreme Court has strictly limited the scope of review to these three items. *See Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402–03, 58 L.Ed.2d 354 (1978) ("We have time and time again emphasized that this statutory language means just what it says."). In *Sheehan*, the court wrote: "The dispositive question is whether the party's objections to the Adjustments Board's decision fall within any of the three limited categories of review" in the RLA. *Id.*

■ The decisions of RLA-created boards are subject to a standard of review that has been characterized as "among the narrowest known to the law." *Diamond v. Terminal Railway*, 421 F.2d 228, 233 (5th Cir. 1970). The Sixth Circuit indicated that "[t]his standard of review is narrower even than the highly deferential 'abuse of discretion' standard." *Jones v. Seaboard System Railroad*, 783 F.2d 639, 642 (6th Cir. 1986). In determining whether the Board exceeded its authority, we must "broadly construe the agreement and resolve all doubts in favor of the Board's authority." *Zeviar v. Local No. 2747, Airline, Aerospace and Allied Employees, IBT*, 733 F.2d 556, 559 (8th Cir.1984).

### 2. *Review of the Arbitration Process and Opinion*

Edwards' complaint sets forth a "laundry list" of items he claims rendered the Arbitration Board's Opinion unlawful. Most of the items are without merit. However, in one crucial regard, we find that the Arbitration Board in this case failed to follow a specific mandate of the RLA, thus giving us jurisdiction to review the award. In this case, no valid award was issued by the Arbitration Board because there is only one signature on the award, two signatures shy of the required majority. Moreover, it appears that only the Arbitrator participated in the decision in this case. As such, we will not presume that the lack of two additional signatures was merely an "oversight" or an easilycorrected "harmless" error. In view of these deficiencies, we are compelled to remand Edwards' grievance to the Arbitration Board for new proceedings consistent with this opinion.

(a)

■ The record shows clearly that only the Arbitrator, Dennis Nolan, signed the Award. The Award was authored by Nolan and prepared for five signatures. The other four board members were to sign and indicate whether they "concur" or "dissent." Only Nolan signed the Award which upheld Edwards' termination, but two more votes were necessary for a majority.

Section 158 (g) of the RLA, made applicable to airline boards by Section 184, states that the collective bargaining agreement "(g) Shall stipulate that the signatures of a majority of said board of arbitration affixed to the award shall be competent to constitute a valid and binding award...." The parties' Agreement in this case contained such a provision: "The Arbitration Board so composed, shall be competent to decide said dispute by majority vote." See Agreement, Art. 7(E)(5)(d). Yet only Dennis Nolan's signature was affixed to the Award, only Dennis Nolan deliberated about the case, and none of the other board members ever indicated their concurrence with the Award. We find that Nolan's signature alone is insufficient to create a valid Award under the RLA.

In *Air Line Pilots Ass'n v. Northwest Airlines, Inc.*, 498 F.Supp. 613 (D.Minn. 1980), the award lacked enough signatures to constitute a majority of the board. The plaintiff, seeking to enforce the award, argued that the deficiency was "immaterial." *Id.* at 618. The court cited Section 158(g) and held that the absence of a majority of signatures meant that the award "never became 'final and binding' on the parties." *Id.* at 619. In support of its decision, the court cited F. Elkouri & E. Elkouri, How ARBITRATION WORKS 236–37 (3d ed.1973):

> The written award must be signed by the arbitrator. Awards of arbitration boards must be signed by all members where a unanimous decision is required, otherwise they must be signed by at least a majority unless the agreement or a stipulation expressly permits issuance of an award by the neutral alone.

In view of this authority and the plain text of the RLA, we are compelled to vacate the decision because the Award entered against Edwards on September 29, 1995 is not a valid and binding award issued by a majority of the Arbitration Board seated in his case.

UPS asserts two points in arguing that this deficiency is, essentially, "harmless" error: (1) the necessity for a majority of signatures was waived by Edwards, thus making Nolan's signature sufficient by the operation of waiver and estoppel; and (2) the practicalities of a five-member board—with two partisans from each side—I will inevitably result in a decision made by (and an Award written by) *only* the neutral Arbitrator. As such, his signature should be sufficient. We disagree on both accounts.

First, we are unwilling to accept the invitation—made throughout UPS' briefs—to place blame on Edwards for any inadequacies of the arbitration process because he "should have objected at the time." Edwards never explicitly or implicitly waived any rights afforded by the RLA, particularly his rights with regard to the Award. We also reject any claim that IPA somehow "vicariously" waived Edwards' rights in this case. It is well-established that "[t]he individual employee's rights cannot be nullified merely by agreement between the carrier and the Union." Air *Line Pilots Ass'n v. Valley Aviation, Inc.,* 855 F.Supp. 27, 31 (D.N.H.1993). *See also* Agreement, Art. 7(E)(11) ("Nothing herein shall be construed to limit, restrict, or abridge the rights or privileges accorded either the crew member or to the Company, the Association or to their duly accredited representatives under the provisions of the Railway Labor Act, as amended."). UPS' "waiver" argument is unpersuasive.

Second, we reject UPS' contention that the views and votes of four of the five members of the Arbitration Board are so predictable as to make their actual participation in the process unnecessary. An affidavit submitted by UPS notes: "It has always been presumed that whichever party the arbitrator rules in favor of concurs in the arbitrator's final result." Affid. of Wm. Beem at 3. We agree that partisan board members will, more often than not, vote the "party line." Nonetheless, where Edwards' very livelihood

is at stake—and the plain text of the RLA and the parties' Agreement states that a majority vote is required—we cannot be so cavalier about predicting how four members will react to days of testimony and evidence. Under UPS' formulation, four of five board members were merely "keeping chairs warm," to paraphrase the plaintiff. UPS suggests utter pragmatism, but the RLA requires a different view.

UPS offers to, if required, perform the "ministerial" act of procuring the signatures of two of the four other Board members in order to make the Award formally-valid. Def.'s. Mem. in Support at 29 n. 15. That will not suffice. First, the Board's jurisdiction terminated following the delivery of the Award in this case, however fatally-flawed. Second, we do not believe that board members' votes to determine whether a man should be hired or fired are "ministerial" in nature—it is far more solemn an obligation.

Third, the record indicates that two Board members were actually substituted for two who were originally seated to hear Edwards' grievance. Of the five Board members, only three heard the whole case. Because one of the two other members who heard the whole case is a union nominee, we are skeptical that UPS can procure concurring signatures from the three who actually *heard* the whole case. We would be inclined to reject signatures by the two Board members who failed to participate in the entire hearing because the notion of a "hearing" requires more than just a "warm body" occupying a chair.

*In Jones v. St. Louis–San Francisco Ry. Co.,* 728 F.2d 257 (6th Cir.1984), the Sixth Circuit considered an RLA case involving a three-member arbitration board with one partisan from each side and one neutral. After the hearing but prior to the decision, the two partisans left the board and were replaced. All three of the newly-constituted board participated in the decision, but only the neutral had actually "heard" the evidence. The court set aside the award and remanded for a new hearing, holding that

> in order for there to be complete fairness to the litigants, we reason that Congress intended for all the arbitrators to *hear* the proof in evidence submitted by the parties

and to consult with each other for the purpose of determining the proper resolution. Only after this procedure has been followed can a decision by the majority of the board be deemed a valid award.

*Id.* at 262. The court pointed to the "general rule" in arbitration that there be "unanimous participation by the arbitrators during the deliberations upon the award to be made." *Id.* at 263 (citation omitted). The court continued:

> Upon the voluntary withdrawal of an arbitrator, the *majority* of the arbitration board may proceed to render an award if the withdrawal occurs *after the evidence has been received and after the arbitrators have consulted about their decision.*

*Id.* (citation omitted and emphasis added). In *Jones,* the two substitute arbitrators neither heard all the evidence nor discussed the award with each other or the neutral board member. "The effect of these events is that only one of the three-member arbitration board was present to give full consideration to the merits of [Jones'] claim." *Id.* at 264. We find a similar flaw in this case.

We conclude that the board failed to comply with the "majority signature" requirement of the RLA. In view of this deficiency, we do not believe that simply allowing UPS to procure two additional signatures actually remedies the clear failure of the Arbitration Board to hear the case and issue a valid opinion. Therefore, we will remand for a new hearing-in a manner consistent with this opinion-before a newly-constituted Arbitration Board in a manner consistent with this opinion.

(b)

The foregoing rationale is sufficient to grant the plaintiff's motion for summary judgment on his petition to set aside the arbitration award. Edwards has, however, articulated numerous other alleged deficiencies in the handling of his case, including attacks on the propriety of performing and admitting certain urine-testing procedures, the time-frame in which the hearings took place, and the manner in which the case was initially submitted to the Arbitration Board. If we were called upon to rule on any of these other grounds for setting aside the Award, we would have ruled against Ed-

wards on each, finding no error by the Arbitration Board. To be clear, our award of summary judgment to Edwards here is predicated solely on the failure of the five-member Arbitration Board in this case to hear the evidence and issue a valid and binding Award.

### CONCLUSION

For the reasons in this Memorandum Opinion, Edwards' claims for breach of contract and employment discrimination against UPS fail as a matter of law. However, we find that the Arbitration Board in this case failed to comply with the provisions of the RLA with regard to the issuance of a final and binding award. Therefore, we will set aside that Award and remand to the Arbitration Board for a re-hearing of Edwards' grievance in a manner consistent with this opinion. We will also order a status conference to address the progress of Edwards' litigation against MLI Dissolution, Inc.

### ORDER

For the reasons set forth in the memorandum opinion entered this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that:

The motion by the defendant, United Parcel Service, Inc., to dismiss the plaintiff's breach of contract and employment discrimination claims (Count II) is **GRANTED.**

On the cross-motions for summary judgment as to the plaintiff's petition to set aside the award of the IPA/UPS System Arbitration Board of Adjustment, the plaintiff's motion is **GRANTED** and the motion of the defendant, United Parcel Service, is **DENIED.** The arbitration award is **SET ASIDE,** and this cause is **REMANDED** to the Arbitration Board for further proceedings consistent with the opinion entered this day.

A status conference to address the progress of Edwards' litigation against MLI Dis-

solution, Inc., shall be held at on October 14, 1997, at 10:30 AM.