**Courtney EDWARDS, Plaintiff–Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Defendant–Appellee.**

No. 99–6691.

United States Court of Appeals, Sixth Circuit.

July 5, 2001.

Before WELLFORD, RYAN, and SUHRHEINRICH, Circuit Judges.

WELLFORD, Circuit Judge.

Plaintiff Courtney Edwards was employed as a pilot for defendant United Parcel Service, Inc. ("UPS") for about six years before his termination, which is the matter now in dispute. Edwards was randomly selected for a Department of Transportation Federal Aviation Administration ("DOT/FAA") urine test for the presence of specified drugs. According to the collective bargaining agreement between Edwards' union, Independent Pilots Association ("IPA"), and UPS, the employee has the right to request that his urine sample be split into two separate specimens. Edwards made this request, and his urine sample was split into two parts.

The laboratory that conducted the tests found the chemical glutaraldehyde in the first of Edwards' urine specimens during the initial screening process. Glutaraldehyde is an adulterating agent not found naturally in urine; it masks the detection of drugs in a urine sample. Certain com-

mercial products, including UrinAid, are marketed for the very purpose of producing false results in urine drug testing. Because of the presence of this adulterant in the urine specimen, it was not possible to determine whether there were drugs in the Edwards specimen. Pertinent DOT regulations prohibit the lab from performing a more thorough test, the gas chromatography test, for example, if drugs are not revealed in the initial screening process.

Because glutaraldehyde does not appear naturally in urine, UPS presumed that Edwards intentionally adulterated his urine sample to avoid the detection of drugs in his urine. Edwards' action was considered to be equivalent to a refusal to submit to drug testing and, on that ground, UPS terminated Edwards' employment. Thereafter, Edwards filed a grievance under the collective bargaining agreement through IPA against UPS.

When the grievance procedure failed to resolve the matter, Edwards took his grievance to an arbitration board, which consisted of five people: two union members, two company members, and a neutral member who often, as in this case, effectively becomes the arbitrator ("the Board"). During the initial hearings on November 11, 1994, and January 3, 1995, Edwards claimed that the testing procedures by the lab were inaccurate. Accordingly, the Board ordered the second half (the split sample) of Edwards' urine to be tested for glutaraldehyde by another lab. This was accomplished, and the other half of the sample similarly revealed the adulterant in the urine specimen.

At a subsequent hearing before the Board held on September 8, 1995, the union did not challenge the results of the second drug test. Instead, it offered a new defense: that Edwards had used genital wart medication that might have contaminated his urine specimen. To contradict that allegation, UPS offered expert testimony that to produce the concentration of glutaraldehyde reported in Edwards' drug tests, approximately one-fourth of a medicine tube would have had to have come into his urine specimen. That testimony was contradicted neither by Edwards nor the union. On September 29, 1995, the Board rendered an opinion denying the grievance and upholding Edwards' dismissal, finding that he intentionally adulterated his urine sample. However, only one of the five board members participating in the case—the neutral member—signed the arbitration order.

Edwards subsequently filed suit against UPS, his union, and the laboratory which performed the initial urine test.[1] This appeal involves only the allegation against UPS that the Board's decision should be vacated.

Initially, the district court granted summary judgment in favor of Edwards on his claim, because § 158(g) of the Railway Labor Act ("RLA") required "the signatures of a majority of [the] board of arbitration affixed to the award shall be competent to constitute a valid and binding award...." 45 U.S.C. § 158(g). Because only one board member had signed the decision, the district court at first determined, it was not a valid and binding award and, therefore, the court had no jurisdiction to review it. *See Edwards v. UPS*, 974 F.Supp. 1043, 1049–50 (W.D.Ky.1997). The district court therefore granted summary judgment to Edwards, but stated in dicta that Edwards' other arguments for reversal were without merit. The district court opined, without going into detail, that "[i]f

---

**1.** The district court granted the union's motion to dismiss. The issue of the union's liability is not before us.

we were called upon to rule on any of these other grounds for setting aside the Award, we would have ruled against Edwards on each, finding no error by the Arbitration Board." *Id.* at 1051.

UPS moved promptly to vacate the district court's decision, arguing that the court improperly relied on § 158(g) of the Act. According to UPS, that section applies only to arbitration boards created to resolve disputes over the formation of new bargaining agreements—so called "interest arbitration"—but does not apply to the arbitration of this dispute arising out of an existing labor agreement. The district court agreed with UPS and reversed its prior decision (citing *Jones v. St. Louis–San Francisco Ry. Co.*, 728 F.2d 257 (6th Cir.1984)). Because it had based jurisdiction to set aside the award solely on the application of the RLA, the district court concluded that its original action was mistaken and that it had been without jurisdiction to set aside the arbitration award. Accordingly, the district court vacated its previous opinion and entered summary judgment for UPS.

A panel of this court (Jones, Ryan, Batchelder, JJ.) considered the district court's rulings and reversed for the district court "to prepare and opinion, explaining fully its reasoning in entering summary judgment." *See Edwards v. UPS*, No. 97–6470, 181 F.3d 100, 1999 WL 238671,*1 (6th Cir. Apr. 19, 1999). Commenting on the district court's lack of detail in its discussion of the "other grounds" for setting aside the arbitration award, we noted that "we have no idea of the reasoning the court might have utilized in upholding the arbitration decision." *Id.* at *3. Thus, we remanded for a more detailed decision.

On remand, the district court attempted to summarize this court's analysis, stating:

> The Court of Appeals upheld this court's decision that we lacked jurisdiction to set aside the award based upon Edwards' allegation of a failure by the board to comply with the three signature requirement of § 158 of the [RLA]. The Court of Appeals then remanded the action to this court for an amplification of the reasons for this court's additional finding that the other grounds raised by Edward for vacation of the award were without merit. In accordance with the mandate of the Sixth Circuit, we will more fully explain our basis for upholding the arbitration decision.

The district court then analyzed Edwards' arguments and found specifically that (1) he was not denied due process; (2) he had not submitted any evidence to support claims of fraud against the Board; (3) the Board's ruling did not alter or violate the provisions of the collective bargaining agreement; (4) UPS's decision to terminate Edwards for testing positive for the presence of glutaraldehyde in his urine sample did not exceed the bounds of the collective bargaining agreement; and (5) the Board did not act beyond its jurisdiction by ordering the second sample of urine to be tested for the presence of glutaraldehyde. Edwards filed this timely appeal, again contesting the adverse decision.

We review the district court's grant of summary judgment *de novo*, using the same test as did the district court. *See Henegar v. Banta*, 27 F.3d 223, 225 (6th Cir.1994). We must view the evidence in a light most favorable to Edwards, drawing all reasonable inferences in his favor. *Id.* Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c).

Though the district court's original decision was vacated on other grounds, the court aptly set out the standard of judicial

review of System Board of Adjustment determinations under the RLA:

> Crucially, our judicial review may be invoked only where: (1) the board failed to comply with the requirements of the RLA; (2) the board exceeded its jurisdiction; or (3) there was fraud or corruption by the board. 45 U.S.C. § 153 First (q). The Supreme Court has strictly limited the scope of review to these three items. *See Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978)....
>
> The decisions of RLA-created boards are subject to a standard of review that has been characterized as "among the narrowest known to the law." *Diamond v. Terminal Railway,* 421 F.2d 228, 233 (5th Cir.1970). The Sixth Circuit indicated that "[t]his standard of review is narrower even than the highly deferential 'abuse of discretion' standard." *Jones v. Seaboard System Railroad,* 783 F.2d 639, 642 (6th Cir.1986). In determining whether the Board exceeded its authority, we must "broadly construe the agreement and resolve all doubts in favor of the Board's authority." *Zeviar v. Local No. 2747, Airline, Aerospace and Allied Employees. IBT,* 733 F.2d 556, 559 (8th Cir.1984).

*Edwards,* 974 F.Supp. at 1048–49. Since we find this analysis on the mark, we must limit our inquiry to whether the Board failed to comply with the RLA, whether the Board exceeded its jurisdiction, or whether there was fraud or corruption by the Board.

### A. Did the Board violate the RLA in failing to include the signatures of a majority of the five-member Board in its order?

■ The district court ultimately held that the three-signature requirement of § 158(g) is not applicable in labor disputes pertaining to existing labor agreements. Rather, it held that the section applies only to decisions of arbitration boards that were created to resolve disputes over the formation of new bargaining agreements-so-called "interest arbitration." Based on that conclusion, the district court held that it could not set aside the award in this cases solely on the ground that the Board failed to comply with § 158.[2]

The district court's conclusion in this regard finds support in *Jones v. St. Louis–San Francisco Ry. Co.,* 728 F.2d 257, 260 n. 2 (6th Cir.1984). In *Jones,* which involved a railroad engineer's labor dispute, this court held without discussion that §§ 157 and 158 of the RLA were not applicable in that case. In another case involving a labor dispute, the Ninth Circuit relied on the language in *Jones* and held directly that "[w]e agree with the Sixth Circuit [in *Jones*] that 45 U.S.C. §§ 157–58 do not apply to settled arbitration." *Jackman v. Northwest Airlines, Inc.,* No. 91–56116, 15 F.3d 1085, 1993 WL 539255 (9th Cir.1993) (unpublished).

In this appeal, Edwards does not distinguish either *Jones* or *Jackman.* Rather, he argues that those opinions were wrongly decided, and that they did not contain any analysis or reasoning. We, however, are compelled to adhere to our finding in

---

2. The district court on remand assumed that the prior panel of this court upheld its finding that the three-signature requirement of § 158 was inapplicable in this case. Edwards disputes the court's assumption, arguing that the appellate panel "expressed no opinion in regard to this question." Interestingly, UPS does not claim that the panel's decision

stands as the "law of the case," but it states in a footnote that "the Sixth Circuit's position can be read, at least implicitly, to make such a finding [that § 158 is inapplicable]." We conclude that § 158 is inapplicable under the present circumstances, and will assume that the previous panel did not explicitly address the issue.

*Jones.* We thus agree with the district court that § 158 is not applicable to this case, and the district court had no jurisdiction to review the arbitration award based on noncompliance with that section.

Edwards also argues that the parties' collective bargaining agreement requires three signatures on arbitration awards. That agreement provides that "[t]he Arbitration Board so composed [of five members], shall be competent to decide said dispute by majority vote." *Edwards,* 974 F.Supp. at 1049 (quoting Agreement, Art. 7(E)(5)(d)). Edwards claims that "[t]he award was not rendered by a majority vote and therefore it did not conform to the jurisdiction granted by the CBA."

In *Jones,* we held that, under the RLA, "the jurisdiction of the arbitration boards is limited to that which is conferred upon them by the arbitration agreement." *Jones,* 728 F.2d at 265. The court arrived at that conclusion from a reading of 29 C.F.R. § 1404.14, which requires that all proceedings conducted by the arbitrator are to be in conformity with the contractual obligations of parties, and the policy that there should be strict adherence to the essential terms of an arbitration agreement. *Id.* at 264–65 (citing *Brotherhood of Ry. & Steamship Clerks v. Norfolk S. Ry. Co.,* 143 F.2d 1015, 1017 (4th Cir.1944)). In the cited railway case, the Board had rendered its order about 14 months after the hearing, when the arbitration agreement provided that such orders must be rendered within 15 days after the hearing. The court held that the goal of the 15–day agreement was to encourage prompt resolution of disputes, and that allowing a reasonable time after the 15 days had expired was consistent with that goal. However, because the 14–month delay was clearly unreasonable, the court held that "the award was rendered so late that the board

had lost jurisdiction over the matter." *Id.* at 266.

■ In this case, the district court's vacated opinion recognized the pertinent provision in the parties' agreement, but it did not address the effect of that language on Edwards' claims because it had found the award defective under § 158. It is clear to us that the Board in this case, while not bound by the three-signature requirement under § 158, is bound by the majority vote provision of the parties' agreement, because "the jurisdiction of the arbitration boards is limited to that which is conferred upon them by the arbitration agreement."

In accordance with this conclusion, we remand to the district court to determine whether, under the special circumstances of this case, the Board's decision was the result of a "majority vote," or as is required by the collective bargaining agreement.[3]

We note that there is no evidence showing that the Board acted based upon "fraud or corruption" under § 153 First (q). Edwards made no objections at the time to the "scheduling of hearing dates," and he was afforded "the opportunity to make a full presentation of his case" as the district court found. There was no due process violation under the circumstances of this case.

For the reasons stated, we REMAND to the district court to consider whether the Board's decision complied with, or may comply with, the "majority vote" provision of the collective bargaining agreement. We do so with regret due to the length of time that elapsed during the course of this controversy.

### B. *Statute of limitations*

In its original opinion, the district court rejected UPS's argument that Edwards'

---

3. We pass no judgment on whether the prior award is correctable.

petition to set aside the Board's decision was barred by the six-month statute of limitations period applicable to RLA contract and fair representation claims. *Edwards*, 974 F.Supp. at 1048. The court found that, although the RLA contained no explicit statute of limitations for petitions challenging arbitration awards in the air carrier industry, the two-year statute of limitations applicable to such petitions filed in the railroad industry should be used under the circumstances. Applying the two-year statute of limitations, the district court found Edwards' petition to have been timely. *Id.; see* 45 U.S.C. § 153 First (r); *see also Association of Flight Attendants v. Republic Airlines*, 797 F.2d 352, 356–57 (7th Cir.1986) (holding that § 153's limitations period applicable to the railroad industry should apply, by analogy, in challenges to actions based on awards of airline system boards). This statute-of-limitations issue was not addressed by the district court in its subsequent order, which vacated other portions of its original decision.

On this appeal, UPS argues in its brief that the district court erred in concluding that the two-year statute of limitations was applicable to Edwards' petition. UPS did not raise this issue in the form of a cross-claim, and it does not defend its reasons for failing to do so. Edwards claims that because UPS did not formally appeal that portion of the district court's decision, the issue is not properly before this court.

An appellee may assert grounds to support the district court's decision that were not raised below, but only if the issue is raised as an alternative argument to support the lower court's judgment. *See Colautti v. Franklin*, 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (stating that appellee may "assert any ground in support of that judgment, whether or not that ground was relied upon or even considered by the trial court") (citations omitted). Whether an issue is properly before the court in an Appellee's Brief, without having raised the issue in a cross appeal, "depends on whether the issue constitutes an attack on the judgment or an alternative theory in support." *New Castle Cty. v. Hartford Accid. & Indemn. Co.*, 933 F.2d 1162, 1205 (3d Cir.1991).

■ Assuming, but not deciding, that this issue is properly before us, we agree with the district court that the two-year statute of limitations is applicable to petitions challenging Board decisions in the airline industry. As the Seventh Circuit recognized, "[i]n 1936, Congress extended much of the Railway Labor Act to the then-fledgling airline industry." *Association of Flight Attendants*, 797 F.2d at 356. Section § 153, which provides that railroad labor disputes must go before the National Railroad Adjustment Board, was not applied to the airline industry because Congress wanted airline labor disputes to be go before boards of adjustment particularly suited to their industry. "Congress' decision not to apply section 153 to the airlines, then, does not reflect any belief that that statute's limitations period was inappropriate for the airline industry. On the contrary, other courts have found sections 153's limitations period a suitable analogy for challenges to rulings of system boards of adjustment." *Id.* (citing *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants*, 563 F.Supp. 1197, 1200 (S.D.N.Y.1983)).

For these reasons, we find that the district court was correct in applying § 153's two-year statute of limitations, by analogy, to Edwards' petition to set aside the Board's decision in this case. Accordingly, we find that Edwards' petition was timely.

## C. *Conclusion*

In light of the foregoing analysis, we REMAND this case to the district court for the reasons and purposes stated.